BERANEK, Judge.
This is a petition for certiorari under Florida Appellate Rule 4.5(c)(1) from a final order of the Florida Real Estate Commission entered July 22, 1977. Petitioners are an individual real estate salesman, an individual real estate broker and a corporate real estate broker. The order in question revoked the registration certificates of each petitioner and it is this revocation which is questioned by certiorari.
The proceedings below began with the filing of an administrative complaint against the petitioners pursuant to Section 475.26 and Section 120.60, Florida Statutes (1977). The complaint was drawn in 14 counts and essentially alleged misuse of deposits in five different real estate sales transactions by the defendants’ failure to place these earnest money deposits in an escrow or trust account in violation of Sections 475.25(l)(a) and 475.25(l)(i), Florida Statutes (1977). In addition, it was alleged that real estate salesman Dreyer promised to pay an improper referral fee and that he failed to pay a promissory note when due. Each defendant was found guilty of all counts relating to the misuse of deposits and found not guilty of the counts relating to an improper referral fee and non-payment of a promissory note.
An evidentiary hearing occurred before a hearings officer. The officer filed a recommended order which was later adopted as the final order of the Real Estate Commission. This order found the defendants guilty of misconduct under the various counts regarding misuse of deposits. The individual defendants were found guilty of violating Sections 475.25(l)(a), 475.25(l)(i) and 475.25(3), Florida Statutes (1977). The registration certificates of all defendants were revoked.
The defendants seek review by certiorari and have raised 21 separate points on review. In view of this complex and broad appellate attack, it is necessary to review the proposed order which was eventually adopted by the Commission as the final order.
The order, in relevant part only, states as follows:
It is alleged that Edward T. Dreyer failed to place earnest money deposits in escrow in five separate real estate transactions; promised to pay a referral fee to a non-registrant; failed to pay a promissory note when due; and that by reason of the foregoing charges has been guilty of a course of conduct or practices which show that he is so incompetent, negligent, dishonest, and untruthful that the money, property and rights of investors may not safely be entrusted to him.
With respect to Robeson and the corporate broker, the complaint alleges that Robeson should have known of Dreyer’s failure to place the five earnest money deposits in escrow and failed to direct the activities of the salesman whose license was held under the supervision of broker Robeson. One count alleges this constitutes a course of conduct or practice showing the registrants are so incompetent, negligent, dishonest and untruthful that the money, property, transactions and rights of investors may not safely be entrusted to them.
Fifteen witnesses were called by Petitioner, two Respondents testified in their own *97 behalf, and 25 exhibits were admitted into evidence.
FINDINGS OF FACT
At all times relevant herein Edward T. Dreyer (Dreyer) was a registered real estate salesman, Donald E. Robeson was a registered real estate broker, and Dreyer Real Estate, Inc. was a registered corporate broker.
During the period between January 23, 1975 and September 30, 1975 Dreyer received earnest money down payments from purchasers Rodriques for $875 on 1/23/75, the Beria Baptist Church for $2650 on 2/13/75, Yinoya for $800 on 3/12/75, Berger for $1700 on 5/14/75, and Behrendt for $800 on 9/30/75.
Checks payable to Dreyer Real Estate, Inc. from Behrendt and Rodriques were converted to cashier’s checks payable to Dreyer Real Estate, Inc. and the Behrendt payment was deposited in Dreyer Real Estate, Inc. account at First Citrus Bank of Indian River County, Vero Beach. Beh-rendt’s check (Exhibit 5) contained the notation ‘Deposit on Trust Malabar for E V2 of N Vi of Lot 11, 2T 29S R 37E.’ None of these down payments were deposited in Dreyer Real Estate, Inc.’s Trust Account. (Exhibit 14)
Dreyer Real Estate, Inc. Operating Account (Exhibit 15) shows a deposit of $2100 on 2/14/75, and $1400 on 5/22/75.
None of the buyers in the above transactions authorized Dreyer to use the down payments although Behrendt, whose check contained the notation that it was to be deposited in trust, told Dreyer, when he gave him the check that he (Dreyer) was the first one to be paid and felt by this comment he had given Dreyer tacit approval to use the money. All of these buyers expected their deposit to be returned if the transaction did not go through.
On December 9, 1975, after Dreyer became aware that he was under investigation, he prepared affidavits that the parties to the above transactions had allowed Dreyer Real Estate, Inc. to utilize the down payment or interim funds pending final disposition of the matter. These affidavits (Exhibits 2, 4, 8, 11, and 13) were executed by the buyers and sellers except for Exhibits 11 and 13 which Anderson refused to sign.
In July or August, 1975 Dreyer, who had a listing on property adjacent to property owned by Paul De Furia told De Furia that he would pay him $250 if he found a purchaser for the property Dreyer had listed. Subsequent thereto De Furia introduced Dreyer to one Trofibio who purchased the property in August, 1975. Although De Furia demanded his ‘finders fee’ Dreyer never paid De Furia.
On December 9, 1974 Dreyer executed a promissory note to a Mrs. Rice to evidence a loan from her of $1500. This note has not been paid.
Respondent Robeson is President and Active Firm Member of Dreyer Real Estate, Inc. He has been a broker since August, 1973 when he commenced so serving for Respondent, Dreyer Real Estate, Inc. He comes to the office almost every day, usually for a short time in the afternoon, and is generally aware of the transactions here involved.
During the time these transactions occurred the office was being moved and or/renovated and money for the improvements was needed. Dreyer told Robeson that the parties to these transactions had authorized the firm to use the deposits before the transactions closed and he (Robeson) did not question the statement. Robeson owns one share of the 60 shares outstanding in Dreyer Real Estate, Inc. Presumably the remaining shares are held by Dreyer.
Robeson paid little attention to the contracts or other transactions that occurred in the office and received 5% of the commissions earned by the office unless he was the salesman in which case he received the usual salesman’s commission of 50%.
In 1973 Dreyer’s license as a real estate broker was revoked. The grounds for revocation of this license were not presented at the hearing. Dreyer testified that he felt the only mistake he made in the transactions here involved was that he did not get *98 authorizations from the parties to use the earnest money deposits at the time the contracts were executed.
CONCLUSIONS OF LAW
Section 475.25(1) F.S. provides in pertinent part that the registration of a registrant may be suspended for a period not to exceed two years upon a finding of fact showing that the registrant has:
“(a) • • • violated a duty imposed upon him by law or by the terms of a listing contract .
(d) Violated any provision of this chapter, or any lawful order, rule or regulation made or issued under the provisions of this chapter .
(i) Fail, if a broker, to immediately place, upon receipt, any money, fund, deposit, check or draft entrusted to him by any person dealing with him as a broker, in escrow with a title company or banking institution located and doing business in Florida, or, deposit said funds in a trust or escrow bank account maintained by him with some bank located and doing business in Florida, wherein said funds shall be kept until disbursement thereof is properly authorized, or, if a salesman, fail to immediately place with his registered employer any money, fund, deposit, check or draft entrusted to him by any person dealing with him as agent of his registered employer.”
Section 475.25(3) F.S. provides in pertinent part:
“The registration of a registrant may be revoked . . . if he shall be found guilty of a course of conduct or practice which show that he is so incompetent, negligent, dishonest or untruthful that the money, property, transactions and rights of investors or those with whom he may sustain a confidential relation, may not safely be entrusted to him.”
By failing to immediately place the earnest money deposit received from the buyers in escrow Respondents violated provisions of the real estate license law above quoted. Once these deposits have been placed in escrow the broker can disburse them only when properly authorized to do so. Even had the parties authorized Dreyer to use the down payment, which the evidence does not show, he could do so only after the down payment had been first placed in escrow.
Obviously the primary actor in the violations here involved was Dreyer. He sold the property, received the down payment, and failed to deliver these payments to his broker or to place them in the escrow account, which presumably was maintained for that purpose.
This was not an isolated transaction whereby one deposit was not placed in escrow, but appears to be the standard operating practices of the office. During the period December 31, 1974 to January 30, 1976 no deposits were made in the Dreyer Real Estate Inc. trust account. The five transactions presented in this case constitute a course of conduct clearly in violation of § 475.25(3) above quoted.
No action of a real estate broker or salesman can result in greater danger to the money and property of investors and those with whom the registrant may sustain a confidential relation than misuing (sic) funds entrusted to the registrant by his client.
Although Robeson was a passive participant in these transactions he has a positive duty to supervise the operations of the salesmen working under the authority of his registration. By failing to perform this supervision, albeit over the owner of the firm, Robeson must be charged with the sins of those for whom he is responsible. In the light of circumstances most favorable to him, Robeson was so incompetent or negligent that the money, property, transactions or rights of investors were seriously hazarded.
Count 12 alleges, and the evidence adduced, shows that Dreyer offered to pay De Furia, a non-registrant, a finders fee for locating a buyer for property Dreyer had listed. Section 475.25(l)(f) F.S. above quoted makes it an offense to pay a fee or share a commission with the non-registrant. All parties here agreed that no such fee was paid. Accordingly there is no violation of § 475.25(l)(f) F.S.
*99 With respect to Count 13 of the Complaint alleging that Dreyer failed to pay the promissory note defendants are found not guilty. . . .
From the foregoing, it is concluded that Respondent, Edward T. Dreyer, Donald E. Robeson and Dreyer Real Estate, Inc. are guilty of all allegations in the Administrative Complaint as alleged except Charges 12 and 13;. ... It is, therefore,
RECOMMENDED that the registration of Edward T. Dreyer as a real estate salesman, the registration of Donald E. Robeson as a real estate broker, and the registration of Dreyer Real Estate, Inc. as a corporate broker be revoked.
DONE and ENTERED this 11th day of May, 1977, in Tallahassee, Florida.
/s/ K. N. Avers
K. N. AYERS
Hearing Officer
Division of Administrative Hearings
Room 530, Carlton Building
Tallahassee, Florida 32304.
We conclude that this order is supported by competent substantial evidence and that it is not subject to reversal based on any of the evidentiary arguments of the petitioners. See Florida Real Estate Commission v. Webb, 367 So.2d 201 (Fla.1978). This court will not substitute its judgment for that of the agency below on an issue of discretion. See Section 120.68(12) Florida Statutes (1977), and Wilson v. Pest Control Commission of Florida, 199 So.2d 777 (Fla.4th DCA 1967).
Petitioners’ major argument is that the salesman had the consent of the purchasers to use the down payments pending closing of the transactions. To support this contention, defendants offered affidavits which defendants had drafted and solicited from the parties involved in the transactions after the investigation as to alleged misconduct had begun. Each of these affidavits was signed after the transaction in question had been closed and completed. The recommended order finds that the purchasers did not in fact give their consent to the use of their deposits prior to the time of closing. The testimony of the various witnesses at hearing is entirely consistent with this finding. It is true that after closing the defendant Dreyer secured from some parties their after-the-fact-consent to the use of the deposit monies pending closing. Fortunately, the transactions involved here were successfully closed and most of the parties were satisfied with the results. The fact that these parties were in retrospect not unhappy with the salesman’s use of the deposit money prior to closing is certainly not determinative of the issue of whether this misconduct constitutes a statútory violation. Further, these consent forms signed by the parties after closing were totally irrelevant to the issue of whether the deposit monies had ever initially been placed in a trust or escrow account as required by the statute.
The evidence was clear that for a period of one year no deposits whatsoever were made into the firm trust account. Both the salesman and the broker defendants were aware of this. The real estate firm was in the process of relocating its office and these monies were needed for relocation expenses. All monies were simply deposited in the operating account of the firm and drawn upon. The five transactions in question established a course of conduct which was in direct violation of the statutory requirements of placing deposits in a trust or escrow account. Section 475.-25(l)(i) so provides and the regulations promulgated pursuant to Chapter 475 specifically require deposits to be held in trust pending a completed closing. The Florida Administrative Code Rule 21V — 14.04 is as follows:
Rights of Brokers in Deposits.
The interested parties involved, other than the broker, may by express agreement, alter the disposal of the deposit from that herein stated, but the burden shall be upon the broker to establish his good faith in the matter if such agreement is to his advantage.
Here the salesman and his supervising broker made no attempt to demonstrate any prior express agreement and offered no excuse or evidence of extenuating circum *100 stances. They simply asserted that the money was needed and that the customers had no objections when they were asked after the completed transactions.
We hold the evidence here was sufficient to support the findings of the Commission below. The salesman and the broker violated both the letter and the spirit of the law in failing to place these deposits in trust or escrow. The salesman was certainly the more active of the two, but the broker violated his clear duty to supervise. There was absolutely no indication that the broker did anything to correct the situation of which he was aware and which was obviously in non-compliance with the law. The total failure of an active real estate brokerage firm to even use its trust account placed the broker on notice.
Petitioners argue that mere mismanagement of trust funds is not in and of itself sufficient to establish dishonest dealings on their part. Petitioners cite Waltman v. Florida Real Estate Commission, 254 So.2d 32 (Fla.3d DCA 1971) for this proposition. This very brief decision does not support such a position. More closely on point is Brod v. Jernigan, 188 So.2d 575 (Fla.2d DCA 1966). Therein the Second District Court of Appeal modified the suspension of a broker’s license where the record disclosed only a technical violation with extenuating circumstances by a broker who had not deposited a $100 earnest money deposit in a separate trust account. The court commented it was clear the situation amounted to only a technical violation and that it was an isolated incidence. Interestingly, the court did affirm a reprimand of the defendant and affirmed the finding of a statutory violation. The instant situation is much more aggravated in that a course of conduct was shown in five separate transactions where there was not the slightest attempt to comply with the trust or escrow account provisions of the statute.
Under all of the facts and circumstances presented below, we find the order of the Real Estate Commission as to the substantive violations is adequately supported by competent evidence. The finding that the violations constituted a course of conduct allows revocation under Section 475.25(3). As such, this Court actually has no authority to exercise discretion in reviewing whether the Commission order is a proper penalty for the offensive conduct. Florida Real Estate Commission v. Webb, supra, specifically so held. Since there was adequate evidence to support the findings of substantive violations against the individual salesman, the individual broker and the corporate broker, the penalty to be imposed was within the discretion of the Commission below.
The order below is affirmed.
AFFIRMED.
DOWNEY, C. J., and LETTS, J., concur.