188 So.2d 575 (1966)
Theodore BROD, Petitioner,
v.
M.V. JERNIGAN and Florida Real Estate Commission, Respondents.
No. 7000.
District Court of Appeal of Florida. Second District.
June 29, 1966.
Rehearing Denied August 3, 1966.
*576 Joseph E. Melendi, of Gibbons, Tucker, McEwen, Smith & Cofer, Tampa, for petitioner.
Frank A. Wilkinson and Stanley A. Reese, Winter Park, for respondents.
PIERCE, Judge.
Pursuant to authority of the Florida Real Estate Commission, acting under Chapter 475 F.S.,[1] an information was filed with said Commission charging petitioner R.T. *577 Brod in five counts with certain violations of said Chapter 475 relating to the carrying on of the privileged business of real estate broker. Upon an adjudication of guilt by the Commission under Counts 1 and 2,[2] the Commission entered order suspending for a period of nine months the registration of petitioner as a broker under said Chapter 475. From said order of suspension, petitioner has applied to this Court for a writ of certiorari[3] to review and to quash the Commission's said order.
After the information was filed as aforesaid, petitioner, hereinafter called defendant, filed his answer thereto, denying any violation of Chapter 475 F.S., and also giving his affirmative version of the facts relating to each Count. The Commission thereupon appointed an Examiner to take testimony and report back to the Commission. Voluminous testimony and documentary evidence was thereupon adduced before the Examiner, who in due course filed his report with the Commission, containing all of the testimony and exhibits so adduced, together with his Findings and Conclusions, and recommending that the Commission find petitioner guilty under Count One and not guilty under Count Two. The Commission, which acted only upon the record of the proceedings before the Examiner, entered final order, adopting his Findings of Fact in toto, but also adjudging defendant guilty under Count Two as well as under Count One, and suspending defendant's registration for a period of nine months. This is the order now sought to be here reviewed.
Defendant contends before this Court that the Commission's order is not supported by competent, substantial evidence. The Commission argues to the contrary, contending that the evidence before the Examiner fully supports the findings and adjudication. In this connection it is noted that the Examiner's findings have no statutory presumption of correctness although he alone heard and observed the witnesses; while the Commission's findings of fact statutorily "have the same force and effect as the findings of a general master in chancery", although nothing was before the Commission but the cold printed record. The quoted statutory presumption would seemingly presuppose that the Commission would personally hear the case. So ordinarily the question would recur: what weight would this Court give the findings of fact when adopted by the Commission merely by reference and upon the basis only of the printed record? The adjudicated cases are in hopeless confusion on this issue.[4] However, from our disposition of the case, the question becomes academic. We hold that both the Examiner and the Commission misapprehended the probative force of the evidence as to Count One, and that the allegations thereof were not proven by competent, substantial evidence.
Count One, after alleging that defendant was a real estate broker duly registered with the Commission, set forth the following:
"COUNT ONE
"(1) About the latter part of February, 1964, Johnnie J. Davis and wife, Alice E. *578 Davis, owners of a home at 1103 North Willow Avenue, Tampa, Florida, listed the home for sale with the defendant broker Brod. The selling price was set at $7800 with a down payment of $700; the property at the time being subject to an existing mortgage in the sum of approximately $3,164.00.
"(2) On March 10, 1964, the defendant induced Davis and wife to sign a contract to sell the home to Wesley Gregory and wife, Annie Gregory, at $7,800 with a deposit of $200.00. The Davises were induced to sign said contract in reliance upon a promise then made by the defendant that if the Gregories did not close the sale on or before May 10, 1964, the closing date specified in the contract, that in such event the defendant would either sell or purchase the home himself, obtaining for the same a net return of $3200 to the Davises.
"(3) Gregory and wife did not close the sale. On May 11, 1964, Davis and wife demanded that the defendant honor his aforesaid promise. In response to such demand, the defendant did not either sell the property or purchase the property himself as promised nor did he make any offers to either sell or purchase the property as promised.
"Wherefore by reason of the foregoing, the defendant Brod is guilty of false promises and breach of trust in a business transaction in violation of Subsection 475.25(1) (a) Florida Statutes."
The record discloses that on March 10, 1964, the Davises and Gregorys did sign a sales contract in defendant's office in Tampa, whereby the Davises agreed to sell their home property to the Gregorys, the deal to be closed on or before May 10, 1964. Earlier, on the same day, defendant had written out in longhand and delivered to the Davises an informal document whereby defendant had agreed to "sell or purchase" the said Davis home for a net return to the Davises of $3200, plus any additional sums the Davises might pay on the existing mortgage during the ensuing 60 days, said paper being signed only by defendant Brod. The Gregorys paid $200 deposit to defendant at the time the sales contract aforesaid was executed, as per the provisions thereof, and some few days later Davis borrowed from defendant the sum of $250 to pay for termite-proofing the home property, presumably in anticipation of the sale to the Gregorys being consummated.
The Gregorys changed their mind about buying the home a few days after signing the contract of purchase, and notified defendant and also the Davises that they would not go through with the deal, giving the defendant the reason that Gregory's father-in-law who was "sponsoring the money" insisted they build a new home rather than buy one already built, and giving the Davises the different reason that defendant "wasn't stable in the price, he kept going up, and the price would fluctuate up as far as figure wise". Defendant gave the Gregorys back their $200. Davis refused to give back or repay to defendant the $250 which he repeatedly described as a loan or a "borrow"; in fact, he stated he had "no intention to" repay the money. Davis took no steps to termite-proof the house, the ostensible purpose of the loan, nor made any move to vacate the homeplace or find another place to live by May 10, 1964, whereupon defendant advised Davis he would not go through with his written promise of March 10th aforesaid.
The Commission contends that the foregoing facts constituted a "listing" of the property in question by the Davises with defendant Brod, that such "listing" was induced by the handwritten agreement of defendant of March 10th, and that when defendant failed either to buy the property himself or sell it to a third party for a net return of $3,200 to the Davises, defendant's said agreement became a "false promise" and his conduct a "breach of trust". F.S. Section 475.25(1) F.S.A., in the part relied upon here by the Commission, provides that *579 a broker's registration may be suspended if he is found guilty of 
"* * * false promises * * * or breach of trust in any business transaction * * *."
The transaction between the various parties, as outlined aforesaid, did not constitute in our view a "listing" of the property by the Davises with defendant as a real estate broker. It was simply in effect a situation whereby, if the Gregorys went through with their purchase contract, the Davises would get a net return of $3,200 cash, and defendant Brod would get, as a profit but not as commission, whatever was left after paying the Davises the $3,200 and paying off the existing mortgage of approximately $3,100; while if the Gregorys failed to consummate the purchase, defendant would simply buy the property for $3,200.
After the Gregorys repudiated their purchase contract, that left only the March 10th "agreement" between defendant and the Davises. Whether defendant was justified in failing to perform upon his written promise to the Davises is beside the point. The point is, it was not a listing as contemplated by Ch. 475 F.S.; and it was in no way an inducement from Brod to the Davises for them to sign the contract with the Gregorys. It was simply a unilateral agreement by defendant Brod, unsigned by the Davises, and totally without consideration. As such, it was unenforceable by Brod against the Davises. Furthermore, it was made by Brod in his own individual capacity, and not as broker for anyone.
There undoubtedly was a promise made by Brod to the Davises, but there was no false promise or at least it was not proved to be false. The statute requires the promise to be false to be grounds for suspension. A promise that is merely unfulfilled is not necessarily a false promise. A promise to do something in the future, even if made as a representation to induce the other person to enter into a contract, does not amount to fraud in the legal sense, Brinkley v. Arnold, 1929, 98 Fla. 166, 123 So. 569. See also Sample v. Ward, 1945, 156 Fla. 210, 23 So.2d 81, and Beatty v. Lucas, 1933, 112 Fla. 265, 150 So. 239. The rule is well stated in Volume 37 C.J.S. Fraud § 11, page 231, wherein it is set forth inter alia as follows:
"* * * fraud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events, even if there is no excuse for failure to keep the promise, and even though a party acted in reliance on such promise; nor * * * is the mere nonperformance of a promise evidence establishing fraud or lack of intent to perform."
A case very much in point is that of Glasser v. Florida Real Estate Commission et al., Fla.App. 1960, 117 So.2d 761. There the Court held (117 So.2d text 762):
"We have determined that the petitioner has been denied a substantial constitutional right, in that the Florida Real Estate Commission did not have before it substantial evidence upon which to base its final order.

"The respondent, Curry, charged on April 17, 1959, that petitioner violated section 475.42(1) (k) Fla. Stat., F.S.A., by filing for record on February 13, 1953, a document entitled `Exclusive Sales Agency', which affected the title of real property, for the purpose of coercing the payment of money. Scienter is made a necessary element of the violation. There is no substantial evidence to support the finding that the petitioner had recorded a `known false document'.

"The judgment of the commission, that the registration of the petitioner as a real estate broker be suspended until the petitioner should by appropriate instrument *580 remove the offending document from the public records of Dade County, should be vacated." (Emphasis supplied.)
Scienter is defined as "knowingly, to signify guilty knowledge", and is an integral element of making "false promises" or committing a "breach of trust". Black's Law Dictionary, Fourth Edition, page 1512; Glasser v. Florida Real Estate Commission, supra.
We hold that the Order of the Commission in the instant case as to Count One was not supported by competent, substantial evidence and was "contrary to the manifest preponderance of the evidence". Potter v. Curry and Florida Real Estate Commission, Fla.App. 1958, 104 So.2d 127.
Count Two of the information against defendant is as follows:
"COUNT TWO
"(1) On February 6, 1964, Margaret A. Young, dealing with the defendant as a broker, entrusted the defendant with the sum of $100 as an earnest money deposit in connection with a certain contract to purchase a home at 2902 Lemon Street, Tampa, Florida, said home being owned by John J. Diaz and wife.
"(2) Upon receipt of said $100, the defendant Brod failed to immediately place said funds in escrow with a title company or banking institution located and doing business in Florida, or to immediately deposit said funds in a trust or escrow bank account maintained by the defendant with some bank located and doing business in Florida.
"Wherefore, in failing to immediately place said funds in escrow or to immediately deposit the same in a trust or escrow bank account as aforesaid, the defendant Brod is guilty of violating Subsection 475.25(1) (i), Florida Statutes."
F.S. Section 475.25(1) (i) F.S.A., under which Count Two was framed, provides that a real estate broker's registration may be suspended if the broker has 
"[f]ailed * * * to immediately place, upon receipt, any money * * * entrusted to him by any person dealing with him as a broker, in escrow with a * * * banking institution * * * or, deposit said funds in a trust or escrow bank account maintained by him with some bank * * * wherein said funds shall be kept until disbursement thereof is properly authorized * * *."
Said Section requires a real estate broker to deposit funds entrusted to him in a real estate transaction in a trust or escrow bank account, presumably to assure that the funds are safe from dissipation by being segregated from all other personal, firm or operating accounts of the broker. The particular violation of this Section by defendant, as specified in Count Two, concerns a $100 earnest money deposit given defendant on February 6, 1964, by one Margaret A. Young in furtherance of a contract by her to purchase a home in Tampa, Florida, owned by Mr. and Mrs. John J. Diaz. During a routine investigation by the Commission's representative on October 9, 1964, it was disclosed that defendant had not deposited the $100 aforesaid in any separate trust or escrow account but he produced a deposit slip evidencing a deposit of $1,000 in currency in the International Bank of Tampa on February 7, 1964, and testified without contradiction that said sizable cash deposit included the $100 received from Margaret A. Young.
This International Bank account of defendant, while not strictly an escrow or trust account, as apparently required by the statute, was an account primarily utilized by defendant as a depository for rentals collected from his own individually owned property and was not used for general operating capital nor for his own personal use. To such extent it was in fact a *581 segregated account, although technically not a trust or escrow account. Additionally, the International Bank account was used to screen from his office staff or personnel the extensive volume of his own individual holdings.
When the $100 Young item came to light in October, 1964, the Commission advised defendant to be more careful in handling earnest money deposits entrusted to him by his clients and to thereafter technically track the law by segregating such funds into an escrow or trust account. Defendant complied immediately and, so far as the instant record shows, said $100 item was the only deposit so irregularly handled. The information was filed against defendant on February 15, 1965, over a year after the $100 incident occurred and several months after the matter had been called to his attention and he had corrected the irregularity in his business practice.
We hold that the Commission's order on the Second Count was supported by competent substantial evidence, but only in the strict, technical sense and involving only one isolated item. It did not relate, or even tend to relate, to any dishonest or fraudulent acts or conduct on the part of defendant in his real estate dealings with the public. It is doubtful if the disciplinary sections of Chapter 475 were ever intended to be used as the basis of suspension proceedings under the circumstances here disclosed.
Chapter 475 vests in the Florida Real Estate Commission a broad discretionary power and authority to supervise the privileged business of real estate broker and to deal firmly with those engaged in it, even to the point of taking away their means of livelihood by revocation or suspension of license. But such potent administrative weapons must always be reasonably and cautiously, and even sparingly, utilized. The administrative processes of the Commission should be aimed at the dishonest and unscrupulous operator, one who cheats, swindles, or defrauds the general public in handling real estate transactions. Here the $100 Young deposit was not misappropriated, or dissipated, or lost; and no one was hurt or prejudiced thereby. In discussing the Commission's disciplinary proceedings that reach the Courts, the First District Court, in Horne v. Florida Real Estate Commission, Fla.App. 1964, 163 So.2d 515, text 517, commented as follows:
"In general these cases have held that the frequency of past unscrupulous practices in Florida real estate dealings are of such public interest as to make the subject amenable to regulation by properly enacted legislation. The fiduciary relationship between customer and broker, inviting and usually receiving a high degree of trust and confidence, is a proper subject for reasonable regulation. The purpose of the statute and these regulations is to protect the public by permitting only those who possess special qualifications of aptitude, ability and integrity to engage in the business. The duty to determine the continued eligibility and qualification of registrants has been vested in the Real Estate Commission in accordance with the procedures provided by Chapter 475. Disciplinary proceedings under this chapter are for the primary purpose of protecting the general public from unscrupulous or dishonest real estate operators." (Emphasis supplied.)
What we have said is not, in the slightest, to be construed as a criticism of the Commission. It is merely to reiterate the guide lines governing its administrative procedures.
We therefore hold that the Commission's final order should be quashed as it relates to Count One and upheld as to Count Two. This brings us to the question of the penalty imposed by the Commission. Obviously, a nine months suspension of defendant's license to do business is harshly inappropriate in the light of this Court's determination of the case. The substantive violation alleged in Count One, *582 upon which the Commission found defendant guilty, has gone out. This leaves only Count Two out of an original fivecount information. The record discloses, at best, only a technical violation by defendant under Count Two, with extenuating circumstances. In our opinion, a suspension of license or registration is not compatible with the violation disclosed, and only a fine of $100 should be imposed.
The authority of this Court to quash the order of the Commission under review and to direct the entry in its stead of a specific appropriate order, has been expressly upheld by the Supreme Court of Florida in Florida Real Estate Commission v. Rogers, Fla. 1965, 176 So.2d 65.
The writ of certiorari prayed for herein is accordingly granted, and the final order of the Florida Real Estate Commission entered on December 28, 1965, suspending the real estate broker's registration of petitioner Theodore Brod for a period of nine months, is quashed, and said Commission is hereupon directed to enter substitute order in said administrative proceeding, finding said Theodore Brod not guilty under Count One and guilty under Count Two of the information therein pending, and to impose against said Theodore Brod, for his violation under said Count Two, a fine of $100, to be paid to said Commission within a short time to be therein fixed.
So ordered.
ALLEN, C.J., and HOBSON, J., concur.

ON PETITION FOR REHEARING
PIERCE, Judge.
On Petition for Rehearing respondent Commission complains that our language in the original opinion, referring to the Second Count, that the transaction "did not relate, or even tend to relate, to any dishonest or fraudulent acts or conduct on the part of the defendant", and that "[i]t is doubtful if the disciplinary sections of Chapter 475 were ever intended to be used as the basis of suspension proceedings under the circumstances here disclosed"; and that "the $100 Young deposit was not misappropriated, or dissipated, or lost; and no one was hurt or prejudiced thereby", imply that fraudulent or dishonest acts or conduct or loss or damage to the public, are prerequisites to the enforcement of F.S. Subsection 475.25(1) (i), F.S.A., and "in essence read exceptions into the statute."
How such construction could be "implied" we cannot conceive, because we actually upheld the Commission in finding defendant guilty under said Second Count, and directed the penalty to be imposed therefor. What we were doing was merely to point out that the violation defined by said subsection is a technical violation of the law governing the real estate business, not involving actual dishonest or fraudulent conduct or loss to the public, albeit it was a violation for which some penalty or sanction could be imposed. The Commission says it does not mind "the lack of these elements (above quoted) being considered in mitigation," which is exactly what we did, and was exactly our purpose in making the observations originally. We are happy to make these clarifications for those who feel a necessity therefor.
One other point raised in the Petition for Rehearing, however, has some merit and we think would justify a modification of the original opinion. That is with respect to the sanction of the $100 fine which we directed the Commission to impose for violation of the Second Count. The Commission properly contends that the Statute, F.S. Chapter 475, F.S.A., contains no express provision for imposition of a fine by the Commission for violations thereunder. The Statute does provide for suspension or revocation of a license under varying circumstances, but does not in terms mention a fine.
*583 We will therefore modify our original opinion by eliminating the language in the last paragraph of the original opinion: "a fine of $100, to be paid to said Commission within a short time to be therein fixed", and substituting therefor: "a private written reprimand of defendant by the Commission"; and any other portion of the opinion referring to the penalty to be imposed shall be considered as modified so as to be consistent therewith. As so modified and clarified herein, the Petition for Rehearing is denied.
Denied.
ALLEN, C.J., and HOBSON, J., concur.
NOTES
[1] Known as the "Real Estate License Law", F.S. Sec. 475.01(1) F.S.A.
[2] The Commission abandoned Counts 3, 4, and 5 for admitted lack of evidence.
[3] F.S. Sec. 475.35 F.S.A.; F.S. Sec. 120.31 F.S.A.; Rule 4.1 F.A.R., 31 F.S.A.
[4] See Ward v. Florida Real Estate Commission, Fla.App. 1962, 141 So.2d 811; Graham v. Florida Real Estate Commission, Fla.App. 1960, 119 So.2d 88; Condermann v. Potter, Fla.App. 1961, 126 So.2d 743; cf. Harmon v. Harmon, Fla. 1949, 40 So.2d 209; Fry v. Benson, Fla.App. 1961, 132 So.2d 617; Thorn v. Florida Real Estate Commission, Fla.App. 1962, 146 So.2d 907, text 909; Board of County Commissioners of Dade County v. State ex rel. Frazier, Fla.App. 1959, 11 So.2d 476; Florida Industrial Commission ex rel., etc. v. National Trucking Company, Fla.App. 1958, 107 So.2d 397; Edgerton, etc. v. International Company, Inc., Fla. 1956, 89 So.2d 488; Hoffman v. Conderman and Florida Real Estate Commission, Fla.App. 1962, 146 So.2d 776.