RAWLS, Judge.
Mrs. Bobbie G. Rivard and Rivard Realty, Inc. filed their petition for writ of cer-tiorari seeking review of an order of the Real Estate Commission finding petitioners guilty of Counts II, III and V of the Information alleging violations of subsections 475.25(1) (a) and (i) and suspending their registrations for 90 days.

Count II

Count II alleged that Mrs. Rivard was guilty of concealment and breach of trust in violation of § 475.25(1) (a), Florida Statutes, F.S.A., for failure to disclose to her client, Mrs. Broadwater, the vendor in *674 the transaction, that she (Mrs. Rivard) would receive a 1% origination fee ($115.-50) from Jackson Securities for arranging the financing for the purchaser.
Under the terms of their agreement the purchaser was to pay $300.00 of the closing costs and Mrs. Broadwater, as seller, was to pay the balance, which amounted to $203.33. The origination fee was included in the itemized closing costs made available to both the vendor and vendee at the time of closing. It is uncontradicted that the origination fee was never discussed with Mrs. Broadwater, and that the fee was not a charge made by the realtor against the vendor. The closing attorney testified that the origination fee is a standard customary charge made by all mortgage companies on all loans, and some mortgage companies, including Jackson Securities, give this 1% back to the mortgage broker who originates the business for the company. Mrs. Rivard never concealed the fact that Jackson Securities would charge the fee. She did not accept the fee in her capacity as a real estate broker, but same was paid to her in the form of a commission in her capacity as a mortgage broker.
The Real Estate Commission takes the position that because of the fiduciary nature of a broker’s business, he is required to divulge to his principal any fees he is to collect as a mortgage .brokerage commission in addition to his real estate brokerage commission, and failure to do so constitutes concealment and violation of trust under § 475.25(1) (a), Florida Statutes, F. S.A. Some time after the occurrence of the transaction above-described, the Commission adopted a rule construing the statute to the effect that any fees received by a broker in any business transaction which is a part of, or incidental to, a real estate sale must be revealed to his principal or the same will be deemed prima facie evidence of violation of § 475.25(1) (a) and (c). The Commission concedes that the rule has no application to Mrs. Rivard but argues that it expresses the Commission’s view of the statute. This contention is without merit.
Subsection 475.25(1) (a), Florida Statutes, F.S.A., provides that registrations may be suspended for a period not exceeding two years upon a finding of facts showing that the registrant has:
“(a) Been guilty of fraud, misrepresentation, concealment, false promises, false pretenses, dishonest dealing, trick, scheme or device, culpable negligence, or breach of trust in any business transaction, or has violated a duty imposed upon him by law or by the terms of a listing contract, written, oral, express or implied, in a real estate transaction; *
The statute is not ambiguous, and the words used therein must be construed according to their usual and natural meaning. It requires nothing more of a real estate dealer or broker than an honest, open and fair relationship with his client, such as is normally expected of a businessman of sound integrity. There was no concealment as to the charge made; it would have been made regardless of who was the ultimate recipient; it was not received by Mrs. Rivard as a real estate broker but in her capacity as a mortgage broker. There were no misleading statements made about the fee, and Mrs. Rivard was under no duty to voluntarily inform Mrs. Broadwa-ter that she would be the ultimate recipient. We reiterate that the subsequently promulgated rule is not applicable to this cause, and its validity and impact not being before this Court is not here considered.

Count III

Count III charged Mrs. Rivard with failure to place a $300.00 earnest money deposit immediately in escrow in violation of § 475.25(1) (i). The facts relating to this Count show that Mrs. Rivard was employed by a Louisiana attorney, Lloyd Cobb, to sell some property. Alvin L. Hammett became interested in a parcel of the property but was having trouble fi *675 nancing same. He had performed some services for RCR Corporation and it was agreed that Mrs. Rivard, as president of RCR, would retain $300.00 of the sum RCR owed Hammett to be used for his earnest money deposit when the two parties reached an agreement. The seller, Cobb, was informed of this arrangement and found it agreeable. When the owner accepted Hammett’s offer, Mrs. Rivard instructed her secretary to make the transfer. Her secretary went to the office on Sunday, August 1, to catch up on some of her work. On that day she wrote a receipt for the $300.00, but since Mrs. Rivard was the only person who could sign the RCR check, she did not complete the transfer. She intended to get the check signed the following day. Mr. Hammett signed the note and mortgage in August and stated that his wife would sign same the following day. Hammett’s wife never did execute the instruments, and in due course Mrs. Rivard told her secretary to disburse the earnest money to the seller. When her secretary got ready to make disbursement, she realized that the transfer had never been completed. She then wrote a check to the seller, Cobb, on the Rivard Realty, Inc. general account, which she was authorized to sign. Thereafter she got Mrs. Ri-vard to sign the RCR check, deposited same in the Rivard Realty Escrow Account, and wrote a check in like sum on the escrow account to reimburse the general account.
Subsection 475.25(1) (i), Florida Statutes, F.S.A., provides that registration may be revoked if the broker:
“(i) Failed, * * * to immediately place, upon receipt, any money, fund, deposit, check or draft, entrusted to him * * * in escrow with a title company or banking institution located and doing business in Florida, or, deposit said funds in a trust or escrow bank account maintained by him with some bank located and doing business in Florida, wherein said funds shall be kept until disbursement thereof is properly authorized, * * *»
The uncontradicted evidence is to the effect that when Rivard Realty received the funds from RCR same were immediately deposited in the escrow account. At the worst these facts indicate a laxity in collecting funds or possibly a technical violation. Petitioners contend, and we agree, that the facts here are comparable to those in Brod v. Jernigan,[1] and in Peck v. Florida Real Estate Commission.[2] In the first case the broker, Brod, commingled a cash earnest money deposit with other cash and deposited same in a segregated account, though technically not an escrow account, such account being used primarily as a depository for rentals collected from his individually-owned property but not used for general operating capital or for his own personal-use. In the second case Peck, a real estate salesman, consummated the transaction on the spot, at which time he received a check for the earnest money, endorsed same, handed it to the owner, and received the owner’s check for the commission. Both of these cases held that these were technical violations, not involving any dishonest or unscrupulous conduct which is punishable by suspension of registration.

Count V

County V alleges that the petitioners violated subsection 475.25(1) (i) in that Mrs. Rivard disbursed Hammett’s $300.00 deposit to Cobb without authority from Hammett who had demanded a return of his money on the grounds that he was the victim of misrepresentations concerning the property he was about to purchase. The facts revealed at the hearing show that it is undisputed that Hammett claimed to have been familiar with the property and knew at all times which parcel he wanted *676 —the 200-foot piece with the two palm trees and the old road; that Mrs. Rivard never went on the property with him; that his first offer to purchase 200 feet was rejected as being underfinanced; that Hammett (but not his wife) signed a second offer, note and mortgage for a 150-foot parcel' over a month after another purchaser had taken part of the property he wanted and long after a sold sign had been placed on same; that even at the time of the hearing he was still confused as to the parcel he wanted because a major part of the road was on the parcel described in his offer to buy whereas the parcel he claims he was bargaining for had only the two palm trees and the beginning and end of the road. The commission made no findings of any misrepresentation and we are bound by that conclusion of fact.
When Hammett refused to perform, Mrs. Rivard, asked her client, Cobb, whether he wanted to declare a forfeiture or seek specific performance; he chose the forfeiture. She gave Hammett 10 days’ notice prior to disbursing the deposit. It is noteworthy here that Hammett never discussed his misunderstanding with Mrs. Ri-vard, but wrote her a note simply stating that he was withdrawing his “offer” (after same had been signed by both parties) due to “misrepresentation” with no explanation. Furthermore, in response to her 10 days’ notice prior to disbursing the deposit, he contended that she accompanied him to the property when he admits that the only time they were together near the property was in a neighbor’s driveway. The evidence shows this driveway to be several hundred feet from the two parcels in dispute.
Mrs. Rivard might well have been charged with violation of § 475.25(1) (c) for disbursing funds which both parties claimed, but such was not included in this Information.
On the facts known to Mrs. Rivard at the time of disbursal, Cobb, the vendor, was the proper party to declare the forfeiture and claim the funds. This he did, and in so doing the same constituted authorization for disbursement of the earnest money.
Having carefully reviewed the record, we find no conduct on the part of the petitioners of the character proscribed by the statute.
The writ of certiorari is accordingly granted and the final order of the Real Estate Commission entered on September 20, 1967, suspending the registrations of Bobbie G. Rivard and Rivard Realty, Inc. for a period of 90 days, is quashed.
CARROLL, DONALD K., Acting C. J., and SPECTOR, J., concur.

. Brod v. Jernigan, 188 So.2d 575 (Fla. App.2d, 1966).

. Peck v. Florida Beal Estate Commission, 204 So.2d 355 (Fla.App.2d, 1967).