575 So.2d 1324 (1991)
Roger HARLOFF, Appellant,
v.
CITY OF SARASOTA and Southwest Florida Water Management District, Appellees.
No. 90-00346.
District Court of Appeal of Florida, Second District.
February 20, 1991.
*1325 Douglas Manson of Blain & Cone, P.A., Tampa, for appellant.
Edward P. de la Parte, Jr., and David Caldevilla of de la Parte & Gilbert, P.A., Tampa, for appellee City of Sarasota.
Edward B. Helvenston, Deputy Gen. Counsel, Brooksville, for appellee Southwest Florida Water Management Dist.
ALTENBERND, Judge.
Roger Harloff appeals a final order of the Southwest Florida Water Management District granting him a consumptive use permit for water allowances which are substantially less than the amounts he had requested. In issuing its final order, the District accepted the hearing officer's findings of fact, but reached different legal conclusions. The District's board essentially followed the legal recommendations of its own staff, even though these recommendations had been rejected by the hearing officer. We affirm the decision because the District's board was free to substitute its own legal conclusions for those of the hearing officer, so long as competent substantial evidence supported the substituted legal conclusions. Hunter v. Dep't of Prof. Reg., 458 So.2d 842 (Fla. 1984); MacPherson v. School Bd. of Monroe County, 505 So.2d 682 (Fla. 3d DCA 1987).
The District's final order will undoubtedly force Mr. Harloff to substantially alter his agricultural activities in Manatee County in order to protect a wellfield supplying water to the City of Sarasota. We write this opinion, in part, because we fear that the facts of this case may become a common theme in Florida as urban and agricultural demands on groundwater reach the capacity of this resource. Whether our current statutory and regulatory structure provides the optimum method to fairly allocate water between competing neighbors is not the issue in this appeal. The facts of this case, however, may be helpful to those in the legislature who are responsible for establishing our state's water policy.
The City of Sarasota owns the Verna Wellfield in the northeast corner of Sarasota County, Florida. This wellfield is located near the southern boundary of Manatee County, Florida, and is very close to Mr. Harloff's farmland. The Verna Wellfield was constructed in 1966. Along with a reverse osmosis plant, it supplies water for approximately 75,000 residents of the City.
The Verna Wellfield contains thirty-nine wells. They obtain water primarily from the Intermediate Aquifer at a depth of 140 feet. When the state first required consumptive use permits for water in 1977, *1326 this wellfield had a production rate of 6.9 million gallons per day (mgd). At that time, the City obtained a permit to continue its use of these wells. In January 1985, the District permitted the City to withdraw 6 mgd average with a 7 mgd maximum. Slightly greater consumptive water uses are permitted when the reverse osmosis plant is not in operation. This permit expired in January 1991, during the pendency of this appeal.
Since 1966, there has been a substantial lowering of the water table at the Verna Wellfield. The static water level has declined 40 feet, and the average pumping levels in the field have declined 25 feet. In the spring of 1989, the wellfield was unable to meet its peak demands for the first time. This area is now part of a water use caution area due to a lack of rainfall and a shortage of groundwater. The hearing officer found that the condition of the wellfield is serious and indicative of more serious future problems unless the supply of groundwater is carefully managed.
Mr. Harloff farms approximately 8,500 acres in Manatee County. He grows tomatoes and other fruits and vegetables. He has 200 full-time employees and over 800 additional part-time workers. No one questions the economic importance and significance of his farming operations in Manatee County.
Although in theory Mr. Harloff could implement a more efficient, more expensive, drip irrigation system, he currently uses a semi-closed ditch irrigation system. His current irrigation system is a common system and is extensively used by many good farmers in Florida. This record does not establish whether a drip system would be economically feasible for Mr. Harloff's operation.
In September 1988, Mr. Harloff applied to the District for a consumptive use permit. Agricultural use of groundwater has grown rapidly in this region of Florida, and the City decided to challenge this permit on the ground that the extent of Mr. Harloff's requested water use would interfere with the City's existing water use. The City requested a formal administrative hearing. Mr. Harloff amended his application in August 1989, requesting a permit for approximately 26 mgd as a seasonal average, 32 mgd as a seasonal daily maximum, and 15 mgd as an annual average. The District's staff studied this request and recommended a permit with limits of 15.6 mgd seasonal average, 20.1 mgd seasonal daily maximum, and 11.1 mgd annual average.
It should be noted that Mr. Harloff intends to withdraw water from a deeper aquifer that provides water of lower quality than the aquifer used by the City. Although these aquifers are at different levels, they are geologically interrelated. Unfortunately, aquifers do not respect county lines. Thus, the withdrawal of water at Mr. Harloff's farmland in Manatee County will impact on the amount of water available at the City's wellfield in Sarasota County. Accordingly, the mixed question of fact and law presented to the hearing officer and the District was the extent to which Mr. Harloff should be permitted to withdraw water that could interfere with the permit previously issued to the City.
To obtain a permit pursuant to the provisions of chapter 373, an applicant must establish that the proposed use of water:
(a) Is a reasonable-beneficial use as defined in section 373.019(4);
(b) Will not interfere with any presently existing legal use of water; and
(c) Is consistent with the public interest.
§ 373.223, Fla. Stat. (1989). A "reasonable-beneficial use" means "the use of water in such quantity as is necessary for economic and efficient utilization for a purpose and in a manner which is both reasonable and consistent with the public interest." § 373.019(4), Fla. Stat. (1989).
In this case, it is clear that Mr. Harloff's intentions to grow produce and his methods to do so would establish a reasonable-beneficial use in the absence of a competing *1327 demand for water. In order to obtain a permit, however, Mr. Harloff was required to prove that his use would not interfere with the City's existing legal use of water and that it would be consistent with the public interest under the environmental conditions which existed in the region at the time of the application.
After a lengthy hearing, the hearing officer approved an extensive set of factual findings. Based on the testimony of Mr. Harloff's expert, these findings state that Mr. Harloff's water consumption would result in an additional 1.7 foot drawdown in the Upper Floridan Aquifer underlying a portion of the Verna Wellfield. Other expert testimony, accepted in the findings of fact, provides that this amount of drawdown "would seriously degrade the productive capacity" of twelve wells in the Verna Wellfield. Mr. Harloff's own proposed and accepted findings of fact state that no party had provided the hearing officer with an analysis of "how much additional impact the Verna Wellfield can withstand."
Despite this evidence, the hearing officer recommended that Mr. Harloff receive a consumptive use permit for the entire allowance of water that he had requested. The City filed an exception to the hearing officer's recommendation. Following a public hearing, the District accepted the hearing officer's findings of fact, but concluded that he had made an error of law. The District concluded that, as a matter of law, Mr. Harloff had not proven the three factors which he was required to establish for his requested permit. It authorized a permit which allocated to Mr. Harloff the amount of water recommended by its staff.
On appeal, Mr. Harloff contends that the District improperly substituted its own decision for that of the hearing officer. He believes that he is the victim of a political decision rather than the recipient of a rational, scientific determination. His suspicions are perhaps heightened by the District's failure to explain with any particularity the legal errors which were made by the hearing officer. On full review of the record, however, we are convinced that the District correctly found errors of law in the hearing officer's proposal and that the District's final order is supported by competent, substantial evidence.
The District has broad powers to reject conclusions of law which have been proposed by the hearing officer. § 120.57(1)(b)(10), Fla. Stat. (1989); Hunter; Siess v. Dep't of Health and Rehabilitative Servs., 468 So.2d 478 (Fla. 2d DCA 1985); MacPherson; Alles v. Dep't of Prof. Reg., 423 So.2d 624 (Fla. 5th DCA 1982). We recognize that if an agency rejects a proposed penalty, it must adequately explain its reasons with "particularity." § 120.57(1)(b)(10), Fla. Stat. (1989); Dep't of Prof. Reg. v. Bernal, 531 So.2d 967 (Fla. 1988); O'Connor v. Dep't of Prof. Reg., 566 So.2d 549 (Fla. 2d DCA 1990). There is, however, no comparable statutory requirement that an agency state with particularity its reasons for rejecting conclusions of law that do not involve a penalty.
Although this broad power could easily be abused, there is merit in placing the power to interpret this narrow area of the law in the hands of the District's board. The District is responsible for implementation of the state water use plan in southwest Florida. If that plan is to be fairly, consistently, and uniformly applied while interpreting such complex concepts as "reasonable-beneficial use" and "interference," permits must be carefully reviewed by a single, experienced governmental body that is responsible for that function and responsive to the electorate. If the legal interpretation of these policies were left to various hearing officers, the concepts would inevitably receive different meanings before different hearing officers. Because agency boards are charged with the responsibility of enforcing the statutes which govern their area of regulation, courts give great weight to their interpretations of those statutes. See Dep't of Envtl. Reg. v. Goldring, 477 So.2d 532 (Fla. 1985); Public Employees Relations Comm'n v. Dade *1328 County Police Benevolent Ass'n, 467 So.2d 987 (Fla. 1985); see also Edward J. Seibert, A.I.A., Architect and Planner, P.A. v. Bayport Beach and Tennis Club Ass'n, 573 So.2d 889 (Fla. 2d DCA 1990).
The factors described in section 373.223 and in the definition of "reasonable-beneficial use" create mixed questions of law and fact. An agency's decision on such a mixed question is entitled to "increased weight when it is infused by policy considerations for which the agency has special responsibility." Santaniello v. Dep't of Prof. Reg., 432 So.2d 84, 85 (Fla. 2d DCA 1983). We defer to the District's legal interpretation of this section. Although the District was not free to reject the hearing officer's findings of fact related to these mixed issues in this case, it was free to substitute its judgment concerning the legal question of whether those facts established a permit which would "not interfere" with the City's water use under its existing permit and would be a "reasonable-beneficial use."
From a review of this record, it is apparent that the hearing officer made at least two errors of law which tainted his legal conclusions. First, the hearing officer's recommended order appears to place the burden of proof on the City or the District staff to establish that Mr. Harloff's requested permit would interfere with the water supply at the Verna Wellfield. The statute, however, clearly places the burden on Mr. Harloff to prove that his request would not interfere. Since Mr. Harloff had the burden of proof, his own proposed finding that no party had prepared an analysis demonstrating the extent of the drawdown that his requested water use would create in the Verna Wellfield was quite damaging to his case.
Second, the hearing officer's decision was based, in part, on steps which the City could take to improve the condition of the Verna Wellfield. The hearing officer assumed that there would be no significant interference of the wellfield by Mr. Harloff's activities because the City could deepen its wells and expend funds to upgrade those wells from their current condition. While it would certainly make sense for the City to take those steps, this hearing was not a hearing on the City's permit. One might question whether adjacent properties with large water consumptions should be compelled to file competing applications. § 373.233, Fla. Stat. (1989). If the City seeks additional water in 1991, for example, Mr. Harloff's permit will presumably be a legal existing use entitled to superiority in the City's hearing. Nevertheless, the statutes do not compel such a pairing process. Legally, the City's permit was an existing permit entitled to superiority. The District's final order correctly recognized the superior status of the City's permit.
Affirmed.
SCHOONOVER, C.J., and RYDER, J., concur.