592 So.2d 1136 (1992)
Donald J. MUNCH, Appellant,
v.
DEPARTMENT OF PROFESSIONAL REGULATION, DIVISION OF REAL ESTATE, Appellee.
No. 90-3238.
District Court of Appeal of Florida, First District.
January 2, 1992.
*1137 Howard Hadley, Maitland, Geoffrey B. Dobson of Dobson & Christensen, P.A., St. Augustine, for appellant.
Janine B. Myrick, Dept. of Professional Regulation, Div. of Real Estate, Orlando, for appellee.
WEBSTER, Judge.
Appellant seeks review of a final order of the Florida Real Estate Commission ("Commission") which rejected certain of the hearing officer's findings of fact and conclusions of law, and the recommendation that the complaint be dismissed; and, instead, suspended appellant's broker's license for one year and imposed a $1,000.00 fine. Based upon the following analysis, we reverse and remand for further consideration by the Commission.
On December 11, 1989, the Department of Professional Regulation ("Department") filed a 2-count administrative complaint against appellant. The complaint involved appellant's activities as the principal in a condominium property management company, Four Seasons Properties. The relevant factual allegations of the complaint read as follows:
4. At all times material herein, [appellant] while licensed as a salesman in the employ of Active One Realty, Inc., represented himself as broker for Four Seasons Properties.
5. On or about December 13, 1987, Holly Munch f/k/a Holly C. Dibler, while employed by [appellant], and acting on behalf of [appellant], entered into a property management agreement with Associated Sand Dollar Condominium, Inc., as owner of certain residential properties, whereby it was represented that Four Seasons Properties, [sic] had agreed to manage Sand Dollar's properties... .
6. Pursuant to the aforementioned property management agreement, [appellant] was to receive rental deposits, manage the rental escrow account, distribute and disburse rental proceeds to the various unit owners, and return security deposits to various renters.
7. [Appellant], from December 13, 1987, through June 1, 1989, received a fee from Associated Sand Dollar Condominium, Inc. as manager and 17% commissions from various and numerous individual owners at the Sand Dollar Condominiums. In turn, [appellant] gave Associated Sand Dollar Condominium, Inc. 2% of that commission to help defray the costs of the Sand Dollar's condominium association.
8. On or about June 1, 1989, the business association between Associated Sand Dollar Condominium, Inc. and [appellant] d/b/a Four Season [sic] Properties was terminated.
9. Upon termination of the property management agreement, [appellant] claimed that Associated Sand Dollar Condominium, Inc. owed him $7,770.61, for services performed. [Appellant] withdrew funds from the security deposits and advance rents accounts prior to the termination of his employment and [appellant] has retained the funds for his own use and benefit all without the prior knowledge and consent of Associated Sand Dollar Condominium, Inc. .. .
10... . [Appellant] did not inform his then employing broker, John F. Cobb t/a Active One Realty, Inc., of the aforesaid property management agreement and related activities performed and [appellant] concealed from his employing broker the $7,770.61 in security deposits and advance rent fees received and retained by [appellant].
... .
12. From December 1987 through August 29, 1989, Four Season [sic] Properties did not have at least one broker to qualify as a real estate broker, but nonetheless *1138 [appellant] continued to engage in the real estate property management business and [appellant] has continued to hold himself out as properly licensed in the real estate brokerage business in Florida... .
13. On August 31, 1989, John F. Cobb t/a Active One Realty, Inc., terminated [appellant's] employment as a real estate salesman... .
Based upon these allegations, Count I accused appellant of "fraud, misrepresentation, concealment, false promises, false pretenses, dishonest dealing by trick, scheme or device, culpable negligence or breach of trust in a business transaction," in violation of Section 475.25(1)(b), Florida Statutes; and Count II accused appellant of "having operated as a broker while licensed as a salesman or ... of having operated as a salesman for a person not registered as his employer," in violation of Sections 475.42(1)(b) and 475.25(1)(e), Florida Statutes.
Appellant filed an answer and a "Motion to Dismiss/Quash." The answer denied all of the material allegations of the complaint and, in addition, asserted as an affirmative defense that appellant possessed a valid state license as a "Community Association Manager," pursuant to which he was legally entitled to perform the acts which were the basis for the complaint. The "Motion to Dismiss/Quash" asserted that the Commission lacked jurisdiction over appellant and over the subject matter because the acts which were the basis for the complaint were governed by Part VIII of Chapter 468 ("Community Association Management"), rather than by Chapter 475 ("Real Estate Brokers, Salesmen, Schools, and Appraisers").
A formal hearing was held on June 27, 1990. At the commencement of the hearing, appellant's "Motion to Dismiss/Quash" was argued and denied. Also at the commencement of the hearing, appellant's counsel stated that appellant was relying on an "exemption" contained in Section 475.011(5), Florida Statutes, as well as upon the argument that the acts which were the basis for the complaint were governed by Part VIII of Chapter 468 and, therefore, could not be prosecuted as violations of Chapter 475.
Prior to October 1, 1988, Section 475.011(5), Florida Statutes, had read:
This chapter does not apply to:
... .
(5) Any person employed as, or acting in the capacity of, a manager of a condominium or cooperative apartment building as a result of any activities or duties which he may have in relation to the renting of individual units within such condominium or cooperative apartment if such manager is acting on behalf of a tenant owning or having an interest in no more than one unit within the condominium or cooperative apartment and if rentals arranged by him are for periods no greater than 1 year.
Effective October 1, 1988, Section 475.011(5) was amended to read:
This chapter does not apply to:
... .
(5) Any person employed for a salary as a manager of a condominium or cooperative apartment complex as a result of any activities or duties which he may have in relation to the renting of individual units within such condominium or cooperative apartment complex if rentals arranged by him are for periods no greater than 1 year.
Ch. 88-20, § 2, Laws of Fla. (emphasis added). Concluding that, prior to October 1, 1988, Section 475.011(5) "arguably" provided an "exemption" for appellant, the hearing officer ruled that the Department would be limited, in attempting to prove the allegations contained in its complaint, to events which occurred after October 1, 1988.[1]
The hearing officer heard the testimony of six witnesses, all of whom testified in person, thereby allowing the hearing officer *1139 to judge their demeanor and credibility. In addition, nine documents were received in evidence.
On August 15, 1990, the hearing officer issued his Recommended Order. To the extent relevant to this appeal, the Recommended Order includes the following "Findings of Fact":
... .
2. At all times material ..., [appellant] was a licensed real estate salesman... . From December, 1987 through May 30, 1989, [appellant] was licensed as a salesman with Active One Realty, Inc., Winter Park, Florida... .
3. Sand Dollar Condominium Association was an association of condominium owners who owned apartments in Sand Dollar Condominiums. Owners of apartments in the condominium had entered into agreements with the association to rent out their apartments. This agreement provided that the association would receive 20% of the rents received.
4. [Appellant] was the owner of Four Seasons Properties (Four Seasons), a property management company, which contracted with Sand Dollar Condominium Association (Sand Dollar) from December 13, 1987 until May 30, 1989 to provide various management services, including but not limited to, recruiting, hiring and supervising all personnel; installing and maintaining an electronic bookkeeping system; collecting monthly assessments; maintaining a bank account; preparing and mailing delinquent notices; auditing accounts and records; and collecting delinquencies; negotiating outside contracts for Sand Dollar; and supervising a rental program organization with advertising, printing, electronic bookkeeping, rotation scheduling and mailings [emphasis in original]. Although not specifically stated, Four Seasons was to collect for the rental of apartments.
5. Four Seasons was to be paid for its management services $2,000.00 per month... . [I]n addition to this compensation, Four Seasons also received 15% of the 20% of receipts from the rental of apartments which were payable to Sand Dollar by the owners of apartments who participated in the rental program provided by the association and managed by Four Seasons.
... .
7. Four Seasons, through its owner [appellant], rented apartments for the association, collected fees from owners, rents from lessees, deposited the proceeds into the bank account of Four Seasons maintained in accordance with its contract with the association, and accounted periodically to the association and owners during the period of its management.
8. [Appellant's] broker knew of [appellant's] activities and did not expect commissions or deposits to his account from [appellant].
9. Four Seasons and [appellant] assert that Sand Dollar owed Four Seasons $7,100.00 when their contract was terminated. Four Seasons provided Sand Dollar a complete financial statement and a check for $10,079.92... . Four Seasons retained $7,100.00, the amount which it claimed it was owed by Sand Dollar. Subsequently, Sand Dollar sued Four Seasons over the $7,100.00 claim and [appellant] paid the money into Sand Dollar's attorney's trust account.
In his "Conclusions of Law," the hearing officer initially notes that Section 475.01(1)(c), Florida Statutes, includes in the definition of "Broker" one who rents, or advertises for rental, real property; and that appellant "advertised apartments for rent, rented apartments, and collected rents." The hearing officer then discusses the exemption set forth in Section 475.011(5), as it applies to activities after the effective date of the 1988 amendment; and appellant's argument that his actions were governed by Part VIII of Chapter 468, rather than by Chapter 475. However, the hearing officer did not reach any conclusion as to whether or not Section 475.011(5) applied to exempt appellant's activities from Chapter 475 after the 1988 amendment; or whether or not Part VIII of Chapter 468, rather than Chapter 475, applied to appellant's activities. Instead, he concluded *1140 that appellant's activities were exempt from Chapter 475 by virtue of Section 475.011(2), which reads:
This chapter does not apply to:
... .
(2) Any individual, corporation, partnership, trust, joint venture, or other entity which sells, exchanges, or leases its own real property; however, this exemption shall not be available if and to the extent that an agent, employee, or independent contractor paid a commission or other compensation strictly on a transactional basis is employed to make sales, exchanges, or leases to or with customers in the ordinary course of an owner's business of selling, exchanging, or leasing real property to the public.
The hearing officer concluded that Section 475.011(2) "covers [appellant] as an independent contractor if he does not receive compensation or a commission on a strictly transactional basis." He further concluded "that commission exclusion is limited to those whose total compensation is payable on a rental-by-rental basis, both in terms of accrual and time." Because he had found that Four Seasons was paid $2,000.00 per month as "salary" plus a monthly "commission" based upon gross monthly rents, the hearing officer reached the ultimate conclusions that the exception to the exemption did not apply to appellant; that the exemption set forth in Section 475.011(2) did apply to appellant; and, therefore, that appellant had not violated Section 475.25(1)(e).
As to Count I of the complaint, which accused appellant of "fraud, misrepresentation, concealment, false promises, false pretenses, dishonest dealing by trick, scheme or device, culpable negligence or breach of trust in a business transaction," in violation of Section 475.25(1)(b), the hearing officer concluded that there was no evidence to support a finding that appellant had been guilty of any such conduct. He said, "From the evidence presented, [appellant] conducted himself properly and protected the assets which were placed in his keeping. He did not violate Section 475.25(1)(b)... ."
The hearing officer recommended that the complaint be dismissed. However, recognizing that the Commission was free to disagree with his legal interpretations of the statutes construed in connection with Count II, the hearing officer further noted that, "should the Commission reject the interpretation of these statutes, the violations of Section 475.25(1)(e), ... under these facts are minimal technical violations arising from changes in statutes."
The Department promptly filed with the Commission exceptions to the Recommended Order. The Department took exception to two findings of fact made by the hearing officer, and to essentially all of the hearing officer's conclusions of law. The Department urged that appellant "be found guilty of Counts I and II" of the complaint; and that his broker's license (which he had obtained after the events forming the basis for the complaint had occurred) be suspended for one year and a $1,000.00 fine imposed.
On October 5, 1990, the Commission entered a Final Order, which states:
After hearing argument of counsel and upon a complete review of the record, the Commission adopts those Findings of Fact and Conclusions of Law outlined in the [Department's] Exceptions and the remaining Findings of Fact and Conclusions of Law of the Hearing Officer.
Further, after a complete review of the record, the Commission rejects the Hearing Officer's Recommendation and cites the [Department's] Exceptions as justification to find the Respondent guilty of Counts I and II, as set forth in the Administrative Complaint.
The Commission also adopted the Department's recommendation as to a penalty, suspending appellant's broker's license for one year, and imposing a $1,000.00 fine. It is this Final Order of which appellant seeks our review.
A principal purpose behind enactment of the Administrative Procedure Act and creation of the Division of Administrative Hearings was to ensure that adversary proceedings between an agency and a private *1141 party, in which the agency decides matters having a significant impact upon the private party, would be conducted according to established and ascertainable rules, before an impartial fact-finder. Reese v. Department of Professional Regulation, 471 So.2d 601 (Fla. 1st DCA 1985). For this reason, Section 120.57(1)(b)10, Florida Statutes, imposes the following limitation upon agencies:
The agency in its final order ... may not reject or modify the findings of fact unless the agency first determines from a review of the complete record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law.
The Final Order of the Commission contains no indication as to the reason why the Commission was adopting the "Findings of Fact... outlined in the [Department's] Exceptions" and, as a necessary result, rejecting certain of the hearing officer's findings of fact. It does not even identify those findings of the hearing officer which are rejected. As a result, the Final Order fails to conform to Section 120.57(1)(b)10. See Reese v. Department of Professional Regulation, supra; Bekiempis v. Department of Professional Regulation, 421 So.2d 693 (Fla. 2d DCA 1982); Lewis v. Department of Professional Regulation, 410 So.2d 593 (Fla. 2d DCA 1982).
Because of the language used in the Final Order, we look to the Department's exceptions to attempt to determine with which of the hearing officer's findings the Department found fault. Our reading of those exceptions reveals that there were two  "that [appellant] received commissions from the condominium association (Sand Dollar)," which the Department claims is found in paragraphs 5 and 7 of the Recommended Order; and "that [appellant's] broker knew of [appellant's] activities," which is found in paragraph 8 of the Recommended Order. While we are of the opinion that neither of the findings to which the Department excepted is of any particular relevance one way or the other to the outcome of this case, we shall, nevertheless, address whether or not the record supports the exceptions.
We have carefully read the entire record. Having done so, we believe that not only is there substantial competent evidence to support the first of the two challenged findings, but that, moreover, there is no competent evidence upon which any other finding could have been predicated.
The Department claims that, in paragraphs 5 and 7 of his Recommended Order, the hearing officer found "that [appellant] received commissions from the condominium association (Sand Dollar)." While such an inference may reasonably be drawn from what the hearing officer actually did find, nowhere in either paragraph 5 or 7 does the "finding" which the Department alleges to have been erroneous appear. What the hearing officer actually did find was that "Four Seasons, through its owner [appellant], rented apartments for the association, collected ... rents from lessees [and] deposited the proceeds into the bank account of Four Seasons maintained in accordance with its contract with the association ..." (paragraph 7); and that "Four Seasons was to be paid for its management services $2,000.00 per month... . Four Seasons also received 15% of the 20% of the receipts from the rental of apartments which were payable to Sand Dollar by the owners of apartments who participated in the rental program provided by the association and managed by Four Seasons" (paragraph 5).
Those findings are perfectly consistent with appellant's testimony that each unit owner desiring to participate in the association's rental program was required to execute a contract authorizing the association to rent the unit, and that appellant, through Four Seasons, was merely supervising the rental activities, pursuant to its contract with the association; and that, at the end of each month, Four Seasons' 15-percent commission was paid "out of ... the Sand Dollar operating account." They are, moreover, entirely consistent with the form "Rental Agreement" which each unit owner was required to execute, and which *1142 gave "[t]he Association ... the sole and exclusive right to rent and/or lease the Owner's Unit," in return for which, "[a]s a fee for its management services ..., the Association [was to] receive a fee of 20% of the monthly gross rental proceeds... ."
The record contains no competent evidence contradicting appellant's testimony, or suggesting that the form "Rental Agreement" did not accurately reflect the actual agreement between the association and unit owners. It was, therefore, error to "adopt" the Department's exception and to reject the hearing officer's finding. Holmes v. Turlington, 480 So.2d 150 (Fla. 1st DCA 1985).
The second challenged finding is that "[appellant's] broker knew of [appellant's] activities," which is found in paragraph 8 of the Recommended Order. We assume (as did the Department) that the "broker" referred to was intended to be John F. Cobb. Having carefully read the entire record, we are unable to find any competent evidence to support this finding of the hearing officer. On the contrary, all of the evidence suggests that Cobb did not know the full extent of appellant's activities, although he was aware that appellant "was working for a condominium association." Therefore, the Commission correctly rejected this finding. However, for reasons to be discussed below, the hearing officer's error regarding this finding has no impact on the ultimate outcome of this case.
While an agency must state "with particularity" why it is modifying or rejecting a hearing officer's findings of fact, no similar obligation exists with regard to conclusions of law. See Harloff v. City of Sarasota, 575 So.2d 1324 (Fla. 2d DCA 1991). Here, the Commission gave no reasons for rejecting virtually all of the hearing officer's conclusions of law; nor was it required to do so (although it might well have been of help to this Court had the Commission provided an explanation). The hearing officer reached two determinative legal conclusions: first, that the exemption set forth in Section 475.011(2), Florida Statutes, applied to appellant and, therefore, appellant had not violated Section 475.25(1)(e), Florida Statutes, as charged in Count II of the complaint; and, second, that there was no evidence to support the charge, made in Count I of the complaint, that appellant was guilty of "fraud, misrepresentation, concealment, false promises, false pretenses, dishonest dealing by trick, scheme or device, culpable negligence or breach of trust in a business transaction," in violation of Section 475.25(1)(b), Florida Statutes.[2] We shall address each of these conclusions in turn.
*1143 The hearing officer concluded that appellant was entitled to the exemption set forth in Section 475.011(2). The Department argues (for the first time on appeal) that this conclusion was erroneous because the hearing officer overlooked the fact that Section 475.011(2) applies only if an "individual, corporation, partnership, trust, joint venture, or other entity," either itself or through "an agent, employee, or independent contractor," "sells, exchanges, or leases its own real property" (emphasis added). Because, according to the Department, appellant was neither leasing his "own real property" nor leasing the real property of the condominium association for which he was acting (but, instead, was leasing the real property of many individual unit owners), the exemption afforded by Section 475.011(2) is clearly not available to appellant. We agree.
The clear language of Section 475.011(2) establishes an intent to limit its application to sales, exchanges or leases by an individual or entity of "its own real property." The evidence establishes unequivocally that, while appellant (as Four Seasons) was acting on behalf of the condominium association (as its "agent" or as an "independent contractor"), the real property being leased consisted of units owned by many individuals, rather than by the association. Therefore, Section 475.011(2) is not applicable, and the hearing officer's conclusion that the Section afforded an exemption to appellant was erroneous. Accordingly, it was also error for the hearing officer to conclude that the charge made in Count II of the complaint had not been proved, because the evidence established that, strictly speaking, appellant had, while "licensed as a salesman," "operate[d] as a salesman for" Four Seasons and/or the condominium association, neither of which was "registered as his employer." (There is, however, no evidence that appellant ever held himself out as a broker, as alleged in the complaint.)
The hearing officer also concluded that appellant had committed "no fraud, no misrepresentation, and no taking." Therefore, he concluded, further, that no violation of Section 475.25(1)(b), as charged in Count I of the complaint, had been proved. The sole argument made by the Department to the Commission in support of its exception to this conclusion was that the evidence established that "[appellant] concealed the rental commissions from broker Cobb and is therefore guilty of violating Subsection [sic] 475.25(1)(b), Florida Statutes [emphasis added]." (This is, likewise, the sole argument presented by the Department on appeal.) Having carefully read the entire record, we conclude that the Department did not carry its burden of establishing by clear and convincing evidence[3] that appellant was "guilty of fraud, misrepresentation, concealment, false promises, false pretenses, dishonest dealing by trick, scheme or device, culpable negligence or breach of trust in a business transaction," thereby violating Section 475.25(1)(b), as charged in Count I of the complaint. Therefore, the hearing officer's conclusion that no violation of that Section had been proved was correct, and rejection of that conclusion by the Commission was error.
It is clear that Section 475.25(1)(b) is penal in nature. As such, it must be construed strictly, in favor of the one against whom the penalty would be imposed. See Holmberg v. Department of Natural Resources, 503 So.2d 944 (Fla. 1st DCA 1987). Reading the first clause of Section 475.25(1)(b) (the portion of the statute which appellant was charged with having violated in Count I of the complaint), and applying to the words used their usual and natural meaning, it is apparent that it is contemplated that an intentional act be *1144 proved before a violation may be found. See Rivard v. McCoy, 212 So.2d 672 (Fla. 1st DCA), cert. denied, 219 So.2d 703 (Fla. 1968).
Appellant, himself, conceded that he had not told broker Cobb that he was receiving a commission on rentals in connection with employment as a condominium association manager. However, Cobb had been appellant's employing broker for only fifteen days before the termination of appellant's relationship with the condominium association. (Cobb bought Active One Realty, Inc., on May 1, 1989, and became its broker of record on May 15; and appellant's relationship with the condominium association was terminated as of May 30.) Moreover, the record establishes without contradiction that appellant did not tell Cobb about the commissions because appellant did not believe that he was receiving the commissions incident to his status as a licensed real estate salesman. Instead, appellant believed that he was receiving the commissions incident to, and as partial remuneration for, his duties as a "community association manager," having received a license to perform such duties, pursuant to Part VIII of Chapter 468, on September 26, 1988.
We are unable to say that appellant's expressed belief that his activities did not relate to his status as a real estate salesman was unreasonable. Prior to October 1, 1988, such activities had been exempt from Chapter 475 because of Section 475.011(5). See note 1 supra. In 1987, the legislature, for the first time, established licensure requirements for "community association managers," whose functions, according to the statute, appeared to include virtually all aspects of condominium association (as well as other residential development associations) management. Ch. 87-343, §§ 7-13, Laws of Fla. Section 8 of this new Act stated that "[a] person who has provided community association management services as of October 1, 1986 [as had appellant], may continue to provide such services without certification until October 1, 1988." On September 26, 1988, appellant became licensed as a "community association manager." Considering all of this, it is certainly understandable why one might not have realized that the relatively obscure amendment to Section 475.011(5) which became operative on October 1, 1988, had the effect for the first time of bringing within the jurisdiction of the Commission certain limited types of rental activities of condominium managers, in certain limited situations. In short, the evidence simply does not support a finding that appellant intentionally "concealed" from broker Cobb the fact that he was receiving commissions.
Although the Commission erroneously concluded that there was sufficient evidence to sustain a finding of guilt as to Count I of the complaint and, therefore, erroneously rejected the hearing officer's findings and conclusions in that regard; as we have already discussed, the Commission correctly concluded that Section 475.011(2), Florida Statutes, did not afford an exemption to appellant and, therefore, it was free to reject the hearing officer's conclusion that the charge made in Count II of the complaint had not been proved. Because we reverse in part the Commission's Final Order, we must remand to the Commission to permit it to reconsider the penalty imposed upon appellant in light of this opinion. See Florida Real Estate Commission v. Webb, 367 So.2d 201 (Fla. 1978); Bernal v. Department of Professional Regulation, 517 So.2d 113 (Fla. 3d DCA 1987), approved, 531 So.2d 967 (Fla. 1988). However, in doing so, we note our agreement with the hearing officer that the violation of Section 475.25(1)(e) was "minimal [and] technical ... arising from changes in statutes." We also believe that it is appropriate to set out the following quotation from Brod v. Jernigan, 188 So.2d 575, 581 (Fla. 2d DCA 1966), a case bearing many similarities to that now before us:
Chapter 475 vests in the Florida Real Estate Commission a broad discretionary power and authority to supervise the privileged business of real estate broker and to deal firmly with those engaged in it, even to the point of taking away their means of livelihood by revocation or suspension of license. But such potent administrative *1145 weapons must always be reasonably and cautiously, and even sparingly, utilized. The administrative processes of the Commission should be aimed at the dishonest and unscrupulous operator, one who cheats, swindles, or defrauds the general public in handling real estate transactions.
Accord Pauline v. Borer, 274 So.2d 1 (Fla. 1973).
REVERSED and REMANDED, with directions.
SHIVERS and ZEHMER, JJ., concur.
NOTES
[1] Although not challenged on appeal, we note that this ruling was correct. Erfman v. Department of Professional Regulation, 577 So.2d 710, 711 (Fla. 5th DCA 1991) ("Before [Section 475.011(5)] was changed in 1988 managers of condominium buildings were exempt from licensing requirements and thus could receive commissions on rentals.")
[2] Two additional legal arguments presented by appellant to support the position that his activities were exempt from, or not covered by, Chapter 475, Florida Statutes, were discussed by the hearing officer. However, the hearing officer reached no conclusion as to either, presumably because he believed that it was unnecessary to do so, having found that appellant qualified for an exemption under Section 475.011(2). With regard to the first  that appellant qualified, even after October 1, 1988 (the effective date of the statute's amendment), for the exemption set forth in Section 475.011(5)  we agree with the decision in Erfman v. Department of Professional Regulation, 577 So.2d 710 (Fla. 5th DCA 1991) (rendered while this appeal was pending), that the effect of the amendment was to make the exemption unavailable to condominium managers who, like appellant, received a commission in addition to (or in lieu of) a salary for activities related to the rental of individual units. With regard to the second  that appellant's rental activities were a part of the "day-to-day services involved with the operation of a community association" [§ 468.431(2), Fla. Stat.] and, therefore, were governed by Part VIII of Chapter 468, relating to "community association management," rather than by Chapter 475  while we agree with the hearing officer that "[t]he vagueness of the term `day-to-day' creates problems in attempting to harmonize the provision of Chapter 475 [i.e., Section 475.011(5), as amended in 1988] and Part VIII of Chapter 468," we do not believe that it was the legislature's intent that rental activities such as appellant's be subsumed within the phrase "other day-to-day services involved within the operation of a community association." Instead, we believe that the phrase was meant merely to act as a catchall for other incidental and routine activities not specifically enumerated. Part VIII of Chapter 468 was created by Chapter 87-343, Sections 7-13, Laws of Florida, and became effective on July 10, 1987. The amendment to Section 475.011(5), bringing under Chapter 475 rental activity by managers of condominium and cooperative apartment complexes for which remuneration is in some form other than "salary," became effective on October 1, 1988. Ch. 88-20, §§ 2, 32, Laws of Fla. Appellant's interpretation of the phrase "other day-to-day services involved within the operation of a community association" contained in Section 468.431(2) as intended to include the rental activities in which he was involved would create an irreconcilable conflict between that Section and Section 475.011(5), as amended in 1988; whereas, the construction we reach avoids any disharmony, while giving full effect to each. See Palm Harbor Special Fire Control District v. Kelly, 516 So.2d 249 (Fla. 1987).
[3] See Ferris v. Turlington, 510 So.2d 292 (Fla. 1987); Ramsey v. Department of Professional Regulation, 574 So.2d 291 (Fla. 5th DCA 1991).