566 So.2d 549 (1990)
Neal A. O'CONNOR, Appellant,
v.
DEPARTMENT OF PROFESSIONAL REGULATION, CONSTRUCTION INDUSTRY LICENSING BOARD, Appellee.
No. 89-02540.
District Court of Appeal of Florida, Second District.
August 10, 1990.
*550 Joseph S. Alexander, Clearwater, for appellant.
Lisa S. Nelson, Tallahassee, for appellee.
ALTENBERND, Judge.
Neal O'Connor appeals a final order of the Construction Industry Licensing Board. Although the hearing officer had recommended a reprimand and an administrative fine of $500, the Board imposed a one-year suspension of Mr. O'Connor's air conditioning license and a fine of $1,000. We reverse the Board's final order and direct the Board to impose the hearing officer's recommended penalty because the Board did not state "with particularity its reasons" for increasing the recommended penalty. § 120.57(1)(b)(10), Fla. Stat. (1987); Dep't of Prof. Reg. v. Bernal, 531 So.2d 967 (Fla. 1988). Assuming the Board intended to justify the increased penalty on the basis that Mr. O'Connor was directly or indirectly guilty of gross negligence, the Board's legal conclusion is based on an erroneous interpretation of the relevant statutes and is not supported by competent substantial evidence.
Mr. O'Connor holds a license as a Class A certified air conditioning contractor.[1] He is employed by Residential Air Conditioning, which has offices in several locations in the Tampa Bay area. Although Mr. O'Connor is not the owner of Residential, he is the "qualifying agent" for the company.[2] A qualifying agent is described as:
[A] person who possesses the requisite skill, knowledge, and experience, and has the responsibility, to supervise, direct, manage, and control the contracting activities of the business entity with which he is connected; who has the responsibility to supervise, direct, manage, and control construction activities on a job for which he has obtained the building permit; and whose technical and personal qualifications have been determined by investigation and examination as provided in this act, as attested by the department.
§ 489.105(4), Fla. Stat. (1987).
On June 27, 1987, Mr. O'Connor obtained a building permit from the City of St. Petersburg to remove an old air conditioning unit and to install a new unit at the home of Ralph Worthington. Residential sent an air conditioning technician to the home. The technician replaced the air compressor outside the home and also replaced the air handler in the attic. Mr. O'Connor did not inspect the technician's work, and it does not appear that anyone else from Residential inspected the work. The record contains nothing to suggest that the technician was unqualified to correctly perform this job or that Residential had experienced any prior problems with the technician. Neither Mr. Worthington nor the technician testified at the hearing.
An inspector for the City inspected this job almost two months later on August 19, 1987. The inspector "red-tagged" the job due to several building code violations. Specifically, he observed that there was no light source near the air handler, that there was poor access to the air handler due to the location of duct work, and that there was no electrical disconnect switch for the unit. The inspector did not observe any problem with the drain pans under the air handler, but characterized the work as not a "real good job" and as "fairly sloppy." At the hearing, it was established that the three problems observed by the inspector had existed with the old system. Residential did not create these problems, but had an obligation to bring the air conditioning system up to the code requirements when it replaced the old unit. The inspector did not testify that these preexisting problems created any clear, substantial *551 threat of serious damage to property or bodily injury to people.
Mr. Worthington never allowed anyone from Residential to return to the attic to fix these problems. Instead, he called Johnson's Air Conditioning, Inc., to repair the code violations. A certified air conditioning contractor at Johnson's, William Rinehart, sent a technician to repair the job. Interestingly, although Mr. Rinehart discussed the job with his technician, it does not appear that Mr. Rinehart ever personally inspected his technician's work. Mr. Rinehart did not testify that the defective work was unusually dangerous to person or property.
The technician from Johnson's who did the repair work did not go to the house until October 1, 1987. In addition to the three code problems, he observed two electrical deficiencies and a water problem concerning condensation from the air handler. He solved the two electrical problems by adding a connector to prevent a wire from possibly vibrating loose in the future and by placing an exterior wire in a weather sealed conduit.
The water problem arose from two sources. First, the drain lines from the air handler were plugged with sand at their exterior end. There was no evidence presented at the hearing to suggest that this condition was created by Residential's technician or that this condition even existed when Residential's technician installed the new unit at the beginning of summer. Second, the air handler was installed at a "slight" tilt. This allowed the water to run away from the drain lines. The two problems resulted in an overflow of water and damage to the ceiling below the attic. From the record, it is unclear whether the overflow would have occurred without the blockage in the lines. Although the testimony of Johnson's technician confirms the inspector's evaluation that the job was sloppy, the technician's testimony did not establish that the problems were unusual or exceptionally dangerous.
In July 1988, the Department of Professional Regulation filed an administrative complaint against Mr. O'Connor. The Department sought disciplinary sanctions for alleged violations of subsections 489.129(1)(d) and 489.129(1)(m), Florida Statutes (1987). These statutory provisions of section 489.129 authorize the Board to impose an appropriate disciplinary sanction on a contractor under the following conditions:
[I]f the contractor, or if the business entity or any general partner, officer, director, trustee, or member of a business entity for which the contractor is a qualifying agent, is found guilty of any of the following acts:
... .
(d) Willful or deliberate disregard and violation of the applicable building codes or laws of the state or of any municipalities or counties thereof.
... .
(m) Upon proof that the licensee is guilty of fraud or deceit or of gross negligence, incompetency, or misconduct in the practice of contracting.
Following the hearing at which the above testimony was presented, the hearing officer submitted a recommended order. In the order, the officer concluded that the technician had violated the city building code and that the technician's disregard of the building code was a willful or deliberate act that could be imputed to Mr. O'Connor due to his position as a qualifying agent of Residential. The officer also concluded that Mr. O'Connor had not properly supervised his technician. Thus, the officer found a violation of subsection (d).
On the other hand, the hearing officer specifically concluded that the technician's installation of the new unit did not constitute gross negligence, incompetence, or misconduct. The officer also noted that neither Residential nor Mr. O'Connor could be blamed for not correcting the defects after their discovery because Mr. Worthington would not allow anyone from Residential back into the home. Thus, the officer found that the Department had failed to prove by clear and convincing evidence that there was a violation of subsection (m).
The Department filed exceptions to the recommended order. The Department accepted *552 the hearing officer's findings of fact, but requested the Board to conclude that Mr. O'Connor was grossly negligent and to impose an increased penalty. The Board rendered its final order, adopting and approving the hearing officer's findings of fact, adopting the Department's conclusion of law concerning gross negligence, and increasing Mr. O'Connor's penalty. Neither the Department's exceptions nor the Board's order contains an explanation why either the technician's acts or Mr. O'Connor's acts constitute gross negligence rather than simple negligence. Mr. O'Connor then appealed to this court.
We reverse the final order because the Board did not expressly state its reasons for increasing Mr. O'Connor's penalty. The Administrative Procedure Act authorizes the Board to increase the recommended penalty, but only if it reviews the complete record and states with particularity its reasons for the increase in penalty by citing to the record in its order. § 120.57(1)(b)(10), Fla. Stat. (1987); Bernal; Pluto v. Dep't of Prof. Reg., 538 So.2d 539 (Fla. 2d DCA 1989); Pages v. Dep't of Prof. Reg., 542 So.2d 456 (Fla. 3d DCA 1989); Van Ore v. Board of Medical Examiners, 489 So.2d 883 (Fla. 5th DCA 1986). In this case, the Board's final order merely adopts by reference the conclusion of law of gross negligence contained within the Department's exceptions.
Assuming the legal conclusion of gross negligence is the basis for the increase, and that such a conclusion would be appropriate, we would still require some additional explanation for the increase in penalty. In 1986, the legislature enacted legislation requiring each board to "adopt, by rule, disciplinary guidelines applicable to each specific ground for disciplinary action which may be imposed by the board." § 455.2273(1), Fla. Stat. (1987) (corresponds to Ch. 86-90, § 2, Laws of Fla.). Chapter 21E-17 of the Florida Administrative Code suggests that a normal penalty for the first offense of gross negligence causing monetary harm is a fine of $500 to $1,500. Fla. Admin. Code Rule 21E-17.001(19)(b).[3] Although the Board may deviate from its range of designated penalties in an appropriate case, the Board did not make a specific finding of an aggravating circumstance that would allow it to impose a penalty above its guidelines. § 455.2273(3), Fla. Stat. (1987).[4]
While the omission of an explanation in the Board's final order may be a correctible procedural error, the Board's incorrect interpretation of the relevant statutes is another matter. § 120.68(9), Fla. Stat. (1987). Section 489.129(1)(m) does not define gross negligence. The Board, however, possesses the authority to specify by rule the acts or omissions which constitute violations for purposes of disciplinary proceedings. § 489.129(3), Fla. Stat. (1987). To our knowledge, the Board has not created any regulation or developed any non-rule policy which explains or amplifies the meaning of gross negligence. Although we give great deference to the Board's interpretation of these statutes, Public Employees Relations Commission v. Dade County Police Benevolent Association, 467 So.2d 987 (Fla. 1985), we do not believe that the legislature has authorized the Board on a case-by-case basis to interpret gross negligence to include matters which the common law would clearly exclude.[5]
*553 In this case, Mr. O'Connor's actions involve a failure to adequately supervise a technician whose skills, abilities, and prior conduct cannot be ascertained from the record. The technician was merely repairing an outdated home air conditioning system. Except for the problems which arose, there is little to distinguish Mr. O'Connor's supervision from that of Mr. Rinehart's at Johnson's Air Conditioning. Neither of them believed it was essential to personally inspect their technicians' work. Obviously, if Florida requires every licensed air conditioning contractor to inspect every home repair job done by every technician, the state will add a significant cost to air conditioning repair. In the absence of any legislation requiring such extensive supervision, the Board was not authorized in this case to conclude that Mr. O'Connor's supervisory actions constituted gross negligence.
The Department relies upon Alles v. Department of Professional Regulation, 423 So.2d 624 (Fla. 5th DCA 1982). We distinguish that case for two reasons. First, it is not clear that Mr. Alles was found to have violated the gross negligence standard. Second, Mr. Alles was legally responsible for the construction of a large, multi-story building employing sophisticated methods of concrete construction. If the construction was not properly supervised, there was a significant risk of collapse, death and destruction. The need to supervise such a complex, long-term project is dramatically different than the need to supervise a common home repair.
The Department also attempts to justify the Board's conclusion by imputing the technician's alleged gross negligence to Mr. O'Connor as Residential's qualifying agent. We are inclined to believe that there was no competent substantial evidence of gross negligence concerning the technician. In deference to the Board, however, we shall assume that the evidence supports a conclusion that the technician was grossly negligent.[6] § 120.68(10), Fla. Stat. (1987).
Since section 489.129 allows the technician's building code violations to be imputed to Mr. O'Connor, it may seem that it would do the same for gross negligence. The language of subsection (d), which governs building code violations, however, is different from the language of subsection (m), which governs gross negligence. Subsection (d) permits the Board to discipline a licensed contractor if the contractor, or any member of the business entity for which the contractor is a qualifying agent, willfully or deliberately disregards and violates a building code. Thus, it appears that the hearing officer properly imputed the technician's building code violations to Mr. O'Connor, as the qualifying agent. On the other hand, subsection (m) permits the Board to discipline a contractor only when the licensee is guilty of gross negligence. Thus, it appears that the gross negligence which authorizes discipline must result from Mr. O'Connor's own acts, and cannot be imputed to him from the technician's acts.
Reversed and remanded with directions.
LEHAN, A.C.J., and PATTERSON, J., concur.
NOTES
[1] § 489.105(3)(f), Fla. Stat. (1987).
[2] § 489.119, Fla. Stat. (1987).
[3] In its proposed recommended order to the hearing officer, the Department recommended a penalty of a $1,000 administrative fine and a one-year suspension of Mr. O'Connor's license. It appears that this penalty exceeds the Board's guidelines under the evidence presented at the hearing. The Department did not advise the officer of any aggravating circumstances in its recommended order, or at the final hearing. § 489.129, Fla. Stat. (1987); Fla. Admin. Code Rule 21E-17.006.
[4] The Department's proposed recommended order to the hearing officer contains a statement that Mr. O'Connor had been previously disciplined by the Construction Industry Licensing Board. This may be true, but there is nothing in our record or in the Board's final order that supports the veracity of this statement.
[5] Black's Law Dictionary defines gross negligence as the "intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another." Black's Law Dictionary 931 (5th ed. 1979). The Florida Supreme Court has defined gross negligence for purposes of the guest passenger statute as conduct in which a reasonable, prudent person would know that the conduct "would probably and most likely" result in an injury to persons or property, while it has defined simple negligence as conduct in which a reasonable, prudent person would know that the conduct "might possibly" result in an injury to persons or property. Carraway v. Revell, 116 So.2d 16 (Fla. 1959). See Glaab v. Caudill, 236 So.2d 180 (Fla. 2d DCA 1970).
[6] The Board has expertise which we do not. It is possible, for example, that the Board members may have perceived a very great risk in the electrical deficiencies which is not apparent to this court from the record.