658 So.2d 1092 (1995)
CEPCOT CORPORATION, Appellant/Cross-Appellee,
v.
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, CONSTRUCTION INDUSTRY LICENSING BOARD, Appellee,
v.
Florida Pool and Spa Association, Inc., d/b/a National Spa and Pool Institute Region VII, Appellee/Cross-Appellant.
No. 94-02333.
District Court of Appeal of Florida, Second District.
July 12, 1995.
Rehearing Denied August 15, 1995.
*1093 Michael S. Hooker and Guy P. McConnell of Glenn Rasmussen & Fogarty, Tampa, for appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Stuart F. Wilson-Patton, Asst. Atty. Gen., Tampa, for appellee.
R. Michael Underwood of Rutledge, Ecenia, Underwood, Purnell & Hoffman, P.A., Tallahassee, for appellee/cross-appellant.
ALTENBERND, Judge.
The narrow legal issue on appeal is whether a person who performs routine swimming pool cleaning is a "contractor" for the purposes of chapter 489, Florida Statutes (1993). We hold that such a person is not a contractor.
Cepcot Corporation (Cepcot) owns and operates several pool supply stores in Florida. Its business includes a division that repairs damaged pools and replaces parts in broken water treatment systems. Cepcot admits that a contractor's license, pursuant to section 489.105(3), Florida Statutes (1993), is needed to operate this division. It also has a division that employs workers who provide regular maintenance and cleaning of residential swimming pools. Cepcot argues that this pool cleaning division does not perform a contracting function.
At the typical job site, an employee of the pool cleaning division empties skimmer baskets and the pump strainer basket, cleans the tile and filter, brushes the walls, skims the surface of the pool, and vacuums the pool. If the water level is low, the employee adds water from a hose. The employee uses a cleaning agent to clean tile, and liquid chlorine and other liquid and solid chemicals to treat and sanitize pool water. As we understand the record, these chemicals are comparable to products a homeowner can purchase at the corner hardware store. The employee does not use more sophisticated direct infusion chlorine gas. No repair or replacement work is done on the pool, tile, pumps, or other pool equipment. This division simply performs the regular maintenance that many homeowners routinely perform for themselves.
In 1987, the First District succinctly held that the chemical treatment of a residential pool, using direct infusion of chlorine gas from a portable tank, did not require a contractor's license. California Chem. Co. v. Department of Professional Regulation, Constr. Indus. Licensing Bd., 501 So.2d 728 (Fla. 1st DCA 1987). However, since that decision, the legislature has repeatedly amended chapter 489. In section 489.105(3), these amendments altered the definition of "contractor," as well as the definitions of "commercial pool contractor," "residential pool/spa contractor," and "swimming pool/spa servicing contractor."[1] As a result, a controversy *1094 has arisen within the pool service industry concerning the need for a contractor's registration or certificate to perform basic pool cleaning. Cepcot petitioned for a declaratory statement under section 120.565. In June 1994, the Construction Industry Licensing Board (the Board) of the Department of Business and Professional Regulation conducted a hearing to resolve the dispute.
At the time of the hearing, chapter 489 stated, in part:
489.105 Definitions.  As used in this part:
... .
(3) "Contractor" means the person who is qualified for, and shall only be responsible for, the project contracted for and means, except as exempted in this part, the person who, for compensation, undertakes to, submits a bid to, or does himself or by others construct, repair, alter, remodel, add to, demolish, subtract from, or improve any building or structure, including related improvements to real estate, for others or for resale to others; and whose job scope is substantially similar to the job scope described in one of the subsequent paragraphs of this subsection ...:
... .
(k) "Residential pool/spa contractor" means a contractor whose scope of work involves, but is not limited to, the construction, repair, water treatment, and servicing of any residential swimming pool or hot tub or spa, regardless of use. The scope of such work includes layout, excavation, operation of construction pumps for dewatering purposes, steelwork, installation of light niches, construction of floors, guniting, fiberglassing, installation of tile and coping, installation of all perimeter and filter piping, installation of all filter equipment and chemical feeders of any type, plastering of the interior, construction of decks, installation of housing for pool equipment, and installation of package pool heaters. However, the scope of such work does not include direct connections to a sanitary sewer system or to potable water lines.
(l) "Swimming pool/spa servicing contractor" means a contractor whose scope of work involves the servicing, repair, water treatment, including, but not limited to, the direct infusion of chlorine gas accomplished through the use of machinery attached to the pool, and maintenance of any swimming pool or hot tub or spa, whether public or private. The scope of such work may include any necessary piping and repairs, replacement and repair of existing equipment, or installation of new additional equipment as necessary. The scope of such work includes the reinstallation of tile and coping, repair and replacement of all piping, filter equipment, and chemical feeders of any type, replastering, reconstruction of decks, and reinstallation or addition of pool heaters.[2]
The Board's order held that some functions of pool cleaning do not require a contractor's registration or certificate, while other functions do require such a license. The ruling is interesting because the unregulated functions seem more hazardous than the regulated functions, and the "physical contact" test used to determine regulated functions seems impractical, if not unworkable.
The Board ruled that the introduction of chemicals into a pool by pouring liquid directly into the pool or broadcasting particulates into the water is not a regulated function. Likewise, direct infusion of chlorine gas through a portable device is not regarded as a regulated function. A pool service is also free to place chlorine tablets into a free floating device. The Board did not clearly state whether Cepcot could legally place the *1095 tablets into a receptacle designed within the pool's water treatment system.
On the other hand, the Board concluded that if a worker used a sponge to wash the tile around the edge of a pool with ordinary cleaning fluid, the worker either needed a contractor's registration or needed to be employed by a person holding a certificate as a pool service contractor.[3] The Board reasoned that a contractor is a person who "alters" or "improves" any structure, and "whenever the equipment of a pool or spa or the surface of a pool or spa is maintained in any fashion that requires physical contact[,] the act is to be considered one which alters or improves a structure."
A portion of the Board's reasoning is correct. Before determining whether a person is a pool/spa servicing contractor or a residential pool/spa contractor, it is necessary to decide whether the person is a contractor. The job scope descriptions in section 489.105(3) are segments of the broader definition of "contractor." Thus, a person is not a pool/spa servicing contractor unless he or she falls within both the broad definition of "contractor" and the narrower definition of "swimming pool/spa servicing contractor."
The activities that are used to define a contractor within the statute are "construct, repair, alter, remodel, add to, demolish, subtract from, or improve any building or structure." Wiping dirt off of tile arguably alters dirty tile. The cleaning process probably removes a few molecules from the surface of the pool  subtracting from the structure. A clean pool is certainly an improvement over a dirty pool. Thus, the Board's physical contact distinction is not a totally illogical construction of the statute. We are obligated to give deference to the Board's interpretations. Public Employees Relations Comm'n v. Dade County Police Benevolent Ass'n, 467 So.2d 987 (Fla. 1985); O'Connor v. Department of Professional Regulation, Constr. Indus. Licensing Bd., 566 So.2d 549 (Fla. 2d DCA 1990). But we are not obligated to dive off the deep end.
Legislative intent is the primary factor in construing a statute, and whenever possible that intent should be derived from the language of the statute. Pfeiffer v. City of Tampa, 470 So.2d 10 (Fla. 2d DCA), review denied, 478 So.2d 53 (Fla. 1985); Vocelle v. Knight Bros. Paper Co., 118 So.2d 664 (Fla. 1st DCA 1960). A statute should be construed in its entirety and within the context provided by the related statutes within the same act. Florida Jai Alai, Inc. v. Lake Howell Water & Reclamation Dist., 274 So.2d 522 (Fla. 1973). Words within a statute should not be given a "literal" meaning if that meaning conflicts with the plain legislative intent. Holly v. Auld, 450 So.2d 217 (Fla. 1984). Under the doctrine of noscitur a sociis one examines the other words used within a string of concepts to derive the legislature's overall intent. Carraway v. Armour & Co., 156 So.2d 494 (Fla. 1963); Smith v. State, 606 So.2d 427 (Fla. 1st DCA 1992), review denied, 618 So.2d 211 (Fla. 1993).
Using these rules, we are influenced by the omission of any concept of "maintenance" or "cleaning" within the definition of contractor. In the context of "construct," "repair," "remodel," and "demolish," we are not inclined to believe that the legislature intended the hypertechnical definition of "alter" and "improve" that the Board employed. Many of the provisions in chapter 489 describe activities that significantly change the physical nature of the structure, as compared to activities that maintain the status quo. Even the definition of a "swimming pool/spa servicing contractor" is written with emphasis upon repair, replacement, reinstallation, and reconstruction. There is no attempt within the statute to regulate residential maids, janitors, or residential cleaning companies, nor any argument in this case that their physical contact with dirty homes transforms them into residential contractors.
*1096 There certainly is a legitimate debate whether persons who come to our homes to clean pools are involved in an activity that sufficiently impacts on our health and safety to warrant this type of regulation. Regulation costs money and tends to limit competition. Whether the dangers Floridians face from pool cleaners who possess only local occupational licenses are sufficient to warrant the added expenses created by state regulation is an issue for the legislature and not this court. We simply conclude that this is an issue that the legislature has not addressed in the existing statutes.
We affirm the order as to those activities of the pool cleaning division that the Board exempted from regulation. We reverse the order to the extent that it holds pool cleaning, in the absence of other repair or replacement activity, to be contracting.
Affirmed in part, reversed in part, and remanded.
PATTERSON, A.C.J., and LAZZARA, J., concur.
NOTES
[1] Between 1988 and 1992, the applicable provisions of section 489.105 were amended as follows: Effective October 1, 1988, subsection (l) was amended to include the direct infusion of chlorine gas, and in subsections (k) and (l), the words "any person" were substituted with the words "a contractor." Ch. 88-156, § 3, at 822, Laws of Fla. Effective October 1, 1989, subsection (k) was amended to read "construction of floors" and "construction of decks," rather than "pouring of floors" and "pouring of decks." Ch. 89-374, § 30, at 2475, Laws of Fla. In addition, subsection (l) was amended to read "reconstruction of decks" rather than "repouring of decks." Id. at 2476. Effective April 2, 1992, the definition of contractor was amended to include the requirement of substantial similarity to "the job scope described in one of the subsequent paragraphs of this subsection." Ch. 92-55, § 1, at 437, Laws of Fla. Effective July 1, 1992, the "direct infusion of chlorine gas" language of subsection (l) was limited to that which is "accomplished through the use of machinery attached to the pool." Ch. 92-115, § 10, at 786, Laws of Fla.
[2] This chapter was amended twice in 1993, chapters 93-154 and 93-166, Laws of Florida, and once in 1994, chapter 94-119. These amendments were not in effect at the time of the hearing in this case, and, in any event, they do not appear to alter this analysis.
[3] We note that section 489.103(9) exempts any work of a casual, minor, or inconsequential nature in which the aggregate contract price is less than $1000. No one argues the applicability of this exemption in this case, perhaps because regulations explain that the exemption does not apply to activities involving the use of toxic or hazardous chemicals. Fla. Admin. Code R. 61G4-12.011.