THOMPSON, J.
Daniel Hazen and his wife, Marlene Hazen, appeal a final summary final judgment in favor of appellees Gregory J. Howell, M.D., Ocala Neurodiagnostic Center, P.A., Mark A. Yap, M.D., Radiology Associates of Ocala, P.A., Ravi Kamar Vel-isetti, M.D., and Anesthesia Care Team, Inc. We affirm.
Daniel Hazen went to the emergency room at Monroe Regional Medical Center on 24 June 1994 complaining of weakness in his lower extremities and severe lower back pain. Hazen had gone to the emergency room five days earlier complaining of left hip and back pain, and was sent home with pain medication. The pain persisted, and he began experiencing weakness in his legs, twice falling or nearly falling when his legs buckled. He was able to walk, though with difficulty. During his 24 June emergency room visit, radiographic tests, including a myelo-gram [1], were ordered, and Hazen was admitted to the hospital.
On the morning of 25 June 1994, appel-lee Velisetti, an anesthesiologist, explained to Hazen he would need to administer a caudal block[2] rather than general anesthesia for the myelogram because Hazen needed to be awake during the test. Ap-pellee Yap performed the myelogram around 3:00 p.m. that day. The next morning, 26 June 1994, Hazen discovered he felt no pain, was numb from his hips down, and could not move his legs. Veli-setti and nursing staff blamed the numbness and inability to move on the anesthesia, telling Hazen it had not yet worn off. Hazen thought this strange because, in his experience, it usually took only four to five hours for the effects of anesthesia to wear off. He thought either something had gone wrong or his condition was worse than the doctors originally thought.
The myelogram revealed massive disc herniation in his lumbar spine, and appel-lees Howell and Kaplan[3], Hazen’s attending physician and neurologist, respectively, advised Hazen he urgently needed surgery. Kaplan performed a laminectomy and discectomy on 27 June 1994. However, Hazen remained paralyzed following the surgery.
He was discharged from the hospital on 1 July 1994 and had six subsequent office visits with Kaplan between July 1994 and February 1995. On 3 August 1994, Hazen visited Dr. Robert Brill complaining of left shoulder pain. Dr. Brill’s notes from that initial visit state:
[Hazen] had back surgery about five weeks ago. He is paralyzed from the waist down. He states that he is paralyzed from a myelogram.
On 8 June 1995, Hazen served Kaplan with a notice of intent to initiate medical malpractice litigation, see § 766.106(2), Fla. Stat. (Supp.1994), and subsequently filed suit on 4 October 1995. Hazen did not serve Howell, Velisetti, Yap, and their employers with a notice of intent to initiate litigation until 3 January 1997. On 9 May 1997, he amended the complaint against Kaplan to add Howell and the others as defendants.
The appellees moved for summary judgment, arguing Hazen served the notice of intent beyond the limitations period, and thus, his action against them is barred. Ruling that the statute of limitations began *443 to run no later than 3 August 1994, the date of Hazen’s visit and statement to Dr. Brill, the trial court entered final summary judgment for the appellees. The court noted that Hazen’s paralysis is the type of injury which should start the limitations period running immediately. Hazen argues on appeal that, under Tanner v. Hartog, 618 So.2d 177 (Fla.1993), the paralysis he suffered after undergoing the myelo-gram and surgery is not the type of injury which, standing alone, would have indicated that medical negligence possibly had occurred, thereby triggering the statute of limitations. He argues further there was a genuine factual issue regarding whether he told Dr. Brill that he had been paralyzed from the myelogram or since the myelogram.
Section 95.11(4)(b), Florida Statutes (1993) states, in pertinent part:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence ...
Section 766.106(4) requires the notice of intent to initiate medical malpractice litigation to be served within the limitations period set by section 95.11. In Tanner, the supreme court held the statute of limitations is triggered by knowledge of the injury and “knowledge that there is a reasonable possibility that the injury was caused by medical malpractice.” Tanner, 618 So.2d at 181. However, as the court explained, the type of injury may be enough to satisfy both requirements. The court stated:
The nature of the injury, standing alone, may be such that it communicates the possibility of medical negligence, in which event the statute of limitations will immediately begin to run upon discovery of the injury itself. On the other hand, if the injury is such that it is likely to have occurred from natural causes, the statute will not begin to run until such time as there is reason to believe that medical malpractice may possibly have occurred.
Id., at 181-2.
The evidence before the trial court showed Hazen was ambulatory before entering the hospital, though he was experiencing weakness in his legs and severe lumbar back pain. More than twelve hours after undergoing the myelogram, Hazen discovered he was still numb from his hips down and his legs were paralyzed. Although medical staff told him the numbness and paralysis were caused by the anesthetic which had not worn off, Hazen reasonably suspected something was amiss because, in his experience, anesthetic effects dissipate in four to five hours. We hold, under the facts of this case, Hazen’s paralysis following the myelogram was sufficient to “communicate[ ] the possibility of medical negligence.” Tanner. Therefore, the two-year statute of limitations began to run on or about 26 June 1994. As such, service of the notice of intent on 3 January 1997 occurred beyond the limitations period, and Hazen’s medical malpractice action against the appellees herein is barred.
AFFIRMED.
DAUKSCH and HARRIS, JJ., concur.

.A thin spinal needle is introduced through the skin of the back into the spinal canal, and a dye is injected which permits the spinal cord and nerves to be seen on x-rays.

. Epidural anesthesia is administered slightly above the coccyx.

. Kaplan and defendant Ocala Neurosurgical Center, Inc. are not involved in this appeal.