Mr. Joel D. Cantor Police Legal Advisor City of Hollywood Police Department 3250 Hollywood Boulevard Hollywood, Florida 33021-6967
Dear Mr. Cantor:
On behalf of the City of Hollywood Chief of Police, you ask substantially the following question:
May the special law enforcement trust fund established under the Florida Contraband Forfeiture Act be used to pay for the LASIK eye surgery of a law enforcement officer?
In sum:
The special law enforcement trust fund established under the Florida Contraband Forfeiture Act may not be used to pay for the LASIK eye surgery of a law enforcement officer since the benefit from such expenses would be primarily personal rather than for a law enforcement function.
Sections 932.701-932.707, Florida Statutes, the Florida Contraband Forfeiture Act, authorize the seizure and forfeiture of any contraband article, vessel, motor vehicle, aircraft, personal property, or real property used in violation of the act. A law enforcement agency effecting a forfeiture of seized property may elect to sell or otherwise salvage or transfer the property to any public or nonprofit organization rather than retain it for the law enforcement agency.[1]
If seized property is sold, the proceeds are disbursed in the manner prescribed by statute.[2] When the seizing agency is a municipality, any remaining proceeds are to be deposited in a special law enforcement trust fund established by the governing body of the municipality.[3] Pursuant to section 932.7055(4)(b), Florida Statutes, funds in a contraband forfeiture trust fund may be expended upon a request by the chief of police to the governing body of the municipality, which is accompanied by a written certification that the request complies with the provisions of the statute. Further, these funds may only be spent following their appropriation to the police department by the governing body of the municipality.
In specifying the uses for such proceeds in the special law enforcement trust fund, section 932.7055(4)(a), Florida Statutes, states:
"Such proceeds and interest earned therefrom shall be used for school resource officer, crime prevention, safe neighborhood, drug abuse education and prevention programs, or for other law enforcement purposes, which include defraying the cost of protracted or complex investigations, providing additional equipment or expertise and providing matching funds to obtain federal grants. The proceeds and interest may not be used to meet normal operating expenses of the law enforcement agency."
Funds received through an appropriation from the contraband forfeiture fund may be expended in accordance with statutorily prescribed procedures:
"1. Such funds may be used only for school resource officer, crime prevention, safe neighborhood, drug abuse education, or drug prevention programs or such other law enforcement purposes as the board of county commissioners or governing body of the municipality deems appropriate.
2. Such funds shall not be a source of revenue to meet normal operating needs of the law enforcement agency.
3. . . . [A]ny local law enforcement agency that acquires at least $15,000 pursuant to the Florida Contraband Forfeiture Act within a fiscal year must expend or donate no less than 15 percent of such proceeds for the support or operation of any drug treatment, drug abuse education, drug prevention, crime prevention, safe neighborhood, or school resource officer program(s). The local law enforcement agency has the discretion to determine which program(s) will receive the designated proceeds."[4]
Contraband forfeiture funds may be used only for those purposes set forth in the statute and for appropriate law enforcement purposes, except normal operating expenses, as determined by the governing body of the municipality. While this office has on occasion concluded that proposed expenditures were outside the scope of permissible uses for contraband forfeiture,[5] ultimately the decision of whether the expenditure is for an appropriate law enforcement purpose must be made by the governing body of the city.[6]
You state that the vision standards for police officers can directly affect the quality of public safety, and therefore inquire whether contraband forfeiture funds may be used for a law enforcement officer's LASIK surgery to correct the officer's vision. Although indirectly beneficial to the law enforcement agency, such an expenditure would be primarily of personal benefit to the individual involved. As such, it would not appear to serve a law enforcement function or purpose as contemplated by the Contraband Forfeiture Act.
Moreover, as noted above, section 932.7055, Florida Statutes, in authorizing the expenditure of trust fund monies for law enforcement purposes, refers to such permissible expenditures as school resource officers, crime prevention, safe neighborhood, drug abuse education and prevention programs, defraying the cost of protracted or complex investigations, providing additional equipment or expertise and providing matching funds to obtain federal grants. Under the doctrine of "noscitur a sociis," the meaning of statutory terms, and the legislative intent behind them, may be discovered by referring to words associated with them in the statute.[7] The expenditure of special law enforcement trust funds for a medical procedure on a law enforcement officer would not appear to qualify as the type of expenditure contemplated by the statute.
Accordingly, I am of the opinion that the special law enforcement trust fund established under the Florida Contraband Forfeiture Act may not be used to pay for the LASIK eye surgery of a law enforcement officer since the benefit from such expenses would be primarily personal rather than for a law enforcement function.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 932.7055(1), Fla. Stat.
[2] See, s. 932.7055(3), Fla. Stat., providing that the proceeds are disbursed in the following priority: satisfaction of any liens preserved by the court in the forfeiture proceedings; payment of costs incurred by the seizing agency in connection with the storage, maintenance, security, and forfeiture of the property; and payment of court costs incurred in the forfeiture proceeding.
[3] Section 932.7055(4)(a), Fla. Stat.
[4] Section 932.7055(4)(c)1.-3., Fla. Stat. The statute further provides:
"Notwithstanding the drug abuse education, drug treatment, drug prevention, crime prevention, safe neighborhood, or school resource officer minimum expenditures or donations, . . . the chief of police and the governing body of the municipality may agree to expend or donate such funds over a period of years if the expenditure or donation of such minimum amount in any given fiscal year would exceed the needs of the . . . municipality for such program(s). Nothing in this section precludes the expenditure or donation of forfeiture proceeds in excess of the minimum amounts established herein."
[5] See, Ops. Att'y Gen. Fla. 97-31 (1997) (city is not authorized to use contraband forfeiture funds to build and maintain a stable for horses to be used for a mounted police patrol unit); 89-78 (1989) (contraband forfeiture funds may not be used to augment salaries of police officers or pay tuition supplements to recruits); and 83-09 (1983) (contraband forfeiture funds may not be used to compensate a physician's assistant to render medical aid to county prisoners).
[6] See, Op. Att'y Gen. Fla. 96-62 (1996) (board of county commissioners has ultimate discretion in determining whether contraband forfeiture trust fund monies will be expended for the purposes requested by the sheriff); 97-31 (1997); and 89-78 (1989) (determination of whether expenditure is for a law enforcement purpose must be made by the governing body of municipality).
[7] See, Turnberry Isle Resort and Club v. Fernandez,666 So.2d 254, 256 (Fla. 3d DCA 1996); Cepcot Corporation v. Department ofBusiness and Professional Regulation, Construction IndustryLicensing Board, 658 So.2d 1092, 1095 (Fla. 2d DCA 1995) (court looked to the terms "construct," "repair," "remodel," and "demolish," in the statute to determine what types of duties were encompassed by the use of the terms "alter" and "improve"). Andsee, Op. Att'y Gen. Fla. 00-07 (2000) (while staff analysis refers to "invoices," that term should be construed in light of the other types of information referenced); 90-55 (1990) (terms of section should be construed in connection with, and their meaning ascertained by reference to, the other words and phrases of the section with which they are associated).