869 So.2d 681 (2004)
Isaac BRYANT, Appellant,
v.
ADVENTIST HEALTH SYSTEMS SUNBELT, INC., et al., Appellees.
No. 5D03-2450.
District Court of Appeal of Florida, Fifth District.
April 2, 2004.
Mark V. Morsch, Mark V. Morsch and Associates, P.A., Winter Park, for Appellant.
Michael A. Estes and Christopher C. Curry of Hannah, Estes & Ingram, P.A., Orlando, for Appellees.
PLEUS, J.
Bryant appeals final orders dismissing three defendants from his second amended complaint for medical malpractice on statute of limitations grounds. He argues that the lower court erred in dismissing the defendants because he alleged that they concealed their negligence and intentionally misrepresented that no complications occurred during surgery. We agree that these allegations were sufficiently plead and, if proven, would toll the statute of limitations. Accordingly, we quash the dismissal orders.
While in the custody of the Department of Corrections ("DOC"), Bryant underwent surgery on September 11, 1996 to repair a torn rotator cuff in his left shoulder. On December 11, 1998, Bryant sued his surgeon, the surgeon's professional association and DOC for medical malpractice. Bryant alleged that his surgeon negligently performed the surgery, injuring his brachial plexus, thereby causing permanent injury. He alleged vicarious liability against the other parties.
Bryant deposed the surgeon on July 28, 2000. The surgeon testified that during the surgery, Bryant's head fell off its support at least once. Based on this new information, Bryant filed a motion to amend complaint on November 2, 2001. The first amended complaint was deemed *682 filed on October 8, 2002.[1] It added, among others, the defendants in this appeal-nurse D. Hayes, medical technician T. Lake and their employer Adventist Health Systems Sunbelt, Inc. d/b/a Florida Hospital East Orlando (referred to collectively as the instant defendants). It alleged that Hayes and Lake negligently allowed Bryant's head to fall off its support during surgery causing his injuries. It further alleged that:
None of the medical records in this case from any of these Defendants contained an entry or mention of the fact that ISAAC BRYANT's head fell off the table and/or out of the head frame on one or more occasions during the surgery on September 11, 1996. Plaintiff ISAAC BRYANT learned of these intraoperative events when his attorney took the deposition of [the surgeon] on July 28, 2000.
The hospital filed a motion to dismiss based on the statute of limitations and the lower court granted the motion without prejudice to refile a second amended complaint.
Bryant filed a second amended complaint, which is the subject of this appeal, on February 14, 2003. In addition to repeating the aforementioned allegations, the second amended complaint also alleged the following:
57. All of the defendants named in this medical malpractice complaint, ... owed a duty to the Plaintiffs to have written in, recorded and/or otherwise reported and documented in the medical records of ISAAC J. BRYANT in relation to the Plaintiff's rotator cuff repair surgery at Florida Hospital East on September 11, 1996 that during the aforementioned surgery, while ISAAC J. BRYANT was unconscious by effect of the anesthesia and paralyzed by other medication, that ISAAC J. BRYANT's head fell off of the table and/or out of the head frame on one or more occasions during said surgery.
58. None of the Defendants in this medical malpractice complaint and itemized in paragraph 57 above wrote down, recorded, documented or otherwise reported in any of the medical records that ISAAC J. BRYANT's head fell off of the table or out of the head frame on one or more occasions during this aforementioned surgery and violated their duty of documentation owed to the Plaintiffs.
59. Furthermore, the Defendants named in this medical malpractice complaint and itemized in paragraph 57 above affirmatively recorded in the medical records regarding and pertaining to the rotator cuff repair surgery the subject of this action that there were no complications or untoward events that occurred during the subject surgery, thereby affirmatively leading the Plaintiffs and their representatives to believe that there were no complications or other untoward events that occurred intra-operatively during the surgery the subject of this action.
60. As a direct consequence of the failure of this duty of disclosure by these Defendants, and as a direct consequence of the fact that the *683 medical records prepared by these Defendants affirmatively documented the lack of intra-operative complications or other untoward events, these Defendants have concealed the actual events that occurred during the surgery the subject of this action, including the fact that ISAAC J. BRYANT's head fell off of the table and/or out of the head frame on one or more occasions during the surgery the subject of this action, and have further intentionally misrepresented the true course of events that occurred during the surgery the subject of this action, including the fact that ISAAC J. BRYANT's head fell off of the table and/or out of the frame on one or more occasions during the subject surgery and the Plaintiffs have been otherwise damaged thereby.
The instant defendants filed motions to dismiss based on the statute of limitations. Without a hearing, the lower court dismissed Bryant's claims against each of these defendants for the following reason:
When the Plaintiff filed the original, complaint in this action, Plaintiff was obviously on notice of his injury as well as being on notice that the injury was the result of malpractice. That notice was sufficient to trigger the statute of limitations. Hazen v. Kaplan, M.D., 734 So.2d 441 (Fla. 5th DCA 1999).

Standard of Review
The standard of review of an order dismissing a complaint is de novo. Randles v. Moore, 780 So.2d 158, 159 (Fla. 2d DCA 2001). Examination must be limited to the four corners of the complaint. Id. The appellate court is "obligated to consider the allegations in the complaint as true and in the light most favorable to the pleader." Florida Farm Bureau General Ins. Co. v. Ins. Co. of North America, 763 So.2d 429, 433 (Fla. 5th DCA 2000).

Merits
Bryant argues that the trial court erred in dismissing the claims against these defendants because it ignored the fact that the second amended complaint alleged that they concealed the incidents giving rise to the claims against them and affirmatively misrepresented that no complications occurred during surgery.
The medical malpractice statute of limitations, section 95.11(4)(b), Florida Statutes (1996) states, in pertinent part:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued.... In those actions covered by this paragraph in which it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury within the four year period, the period of limitations is extended forward 2 years from the time that the injury is discovered or should have been discovered with the exercise of due diligence, but in no event to exceed 7 years from the date the incident giving rise to the injury occurred.
The supreme court has noted that, "[t]his statutory section prescribes (1) a statute of limitations of two years; (2) a statute of repose of four years absent fraud or intentional misconduct; and (3) a statute of repose of seven years where there is an allegation that fraud, concealment, or intentional misrepresentation of fact prevented *684 discovery of the negligent conduct." Carr v. Broward County, 541 So.2d 92, 94 (Fla.1989).
The terms "fraud, concealment and intentional misrepresentation" were recently defined in Nehme v. Smithkline Beacham Clinical Laboratories, Inc. 863 So.2d 201 (Fla.2003) as follows:
"Because the statute does not define the term [concealment], the Court must resort to canons of statutory construction in order to derive the proper meaning." Seagrave v. State, 802 So.2d 281, 286 (Fla.2001). "One of the most fundamental tenets of statutory construction requires that we give statutory language its plain and ordinary meaning, unless words are defined in the statute or by the clear intent of the legislature." Green v. State, 604 So.2d 471, 473 (Fla. 1992). "When necessary, the plain and ordinary meaning of words can be ascertained by reference to a dictionary." Seagrave, 802 So.2d at 286; see also L.B. v. State, 700 So.2d 370, 372 (Fla. 1997) (stating that "a court may refer to a dictionary to ascertain the plain and ordinary meaning which the legislature intended to ascribe to the term").
To extend the repose period, the statute requires that "concealment" prevent "the discovery of the injury." "Conceal" is defined as (1) to prevent disclosure or recognition of; and (2) to place out of sight. Merriam Webster's Collegiate Dictionary 238 (10th ed.1994). More specifically, "concealment" is defined as (1) the act of refraining from disclosure; esp. an act by which one prevents or hinders the discovery of something; and (2) the act of removing from sight or notice; hiding. Black's Law Dictionary 282 (7th ed.1999). Under these definitions, concealment connotes knowledge.
Other tools of statutory construction also lead us to conclude that concealment implies knowledge. Under the doctrine of noscitur a sociis (a word is known by the company it keeps), one examines the other words used within a string of concepts to derive the legislature's overall intent. See Cepcot Corp. v. Dept. of Bus. & Prof'l Reg., 658 So.2d 1092, 1095 (Fla. 2d DCA 1995); Carraway v. Armour & Co., 156 So.2d 494 (Fla.1963). Here, the string of concepts in the statute is "fraud, concealment, or intentional misrepresentation of fact." "Fraud" is generally defined as (1) a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment; and (2) a misrepresentation made recklessly without belief in its truth to induce another person to act. Black's Law Dictionary 670 (7th ed.1999). "Intentional misrepresentation of fact" is the intentional (done with the aim of carrying out the act) act of making a false or misleading statement about something. Id. at 814, 1016.
Based upon these definitions, we conclude that the second amended complaint sufficiently alleged concealment and intentional misrepresentation of fact, which, if proven, would toll the statute of limitations.
The defendants argue that the allegations of concealment do not extend the limitations period because the concealment did not prevent Bryant from discovering his injury, as is required by the plain language of the statute. Section 95.11(4)(b) requires the plaintiff to prove that the concealment "prevented the discovery of the injury." (Emphasis added). Obviously, the alleged concealment in this case did not prevent Bryant's discovery of damage to his brachial plexus, as evidenced by his filing of the original complaint against other defendants.
However, the Second District Court of Appeal rejected this argument in Phillips *685 v. Mease Hospital and Clinic, 445 So.2d 1058 (Fla. 2d DCA), rev. denied, 453 So.2d 44 (Fla.1984). In that case, a trial court dismissed a complaint on the ground that the alleged concealment did not prevent the plaintiff from discovering the injury, only the negligent causation of the injury. The Second District disagreed, stating,
We find that the trial court mistakenly restricted the word "injury" in part two of the statute to physical injury. A cause of action in a medical malpractice case necessarily includes a negligent act, omission, or breach of contract, and a resulting injury. Section 95.11(4)(b) defines an "action for medical malpractice" as a claim in tort or in contract for death, injury or monetary loss "arising out of ... diagnosis, treatment, or care." The extension in part two of the statute is for an "injury" not discovered "within the 4-year period" provided in part one of the statute. "Injury" in part two, therefore, must refer also to the "incident" in part one. Reading the statute as a whole therefore requires, in our opinion, that both "incident" (or act) and "injury" must be known and that fraud, concealment or intentional misrepresentation of fact that conceals either will extend the limitations period as provided in section 95.11(4)(b).
Id. at 1061. Applying this interpretation, the court reversed the dismissal of a complaint because the plaintiff alleged that her medical providers' intentional misrepresentations about their negligent treatment in 1976 caused her to not become aware of her claims against them until 1982. The court concluded, "These allegations were sufficient to invoke part two of section 95.11(4)(b) so that appellants' cause of action was no longer, on the face of the complaint, barred by the limitations of part one of section 95.11(4)(b)." Id.
This broad interpretation of the concealment provision has been consistently followed since the supreme court's statement in Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976), holding modified on other grounds, Tanner v. Hartog, 618 So.2d 177 (Fla.1993) that "fraudulent concealment by defendant so as to prevent plaintiffs from discovering their cause of action, where the physician has fraudulently concealed the facts showing negligence, will toll the statute of limitations until the facts of such fraudulent concealment can be discovered through reasonable diligence." Id. at 37 (emphasis added). See, e.g., Menendez v. Public Health Trust of Dade County, 566 So.2d 279, 281 (Fla. 3d DCA 1990) ("when defendants actively misrepresent or conceal their negligence, or conceal known facts relating to the cause of the injury, the statute of limitations does not begin to run until plaintiff is able to discover the negligence.") (emphasis added).
The defendants also argue that the lower court correctly dismissed the counts against them in reliance on this court's decision in Hazen v. Kaplan, 734 So.2d 441 (Fla. 5th DCA 1999). We disagree. In Hazen, the plaintiff became paralyzed from the waist down after undergoing a myelogram. His medical records indicated that he subsequently reported this fact to another doctor. The trial court granted summary judgment to the defendants because the plaintiff failed to file his complaint within two years of the date he acknowledged being on notice of the cause of his injury to another doctor. This court affirmed, finding the plaintiff's "paralysis following the myelogram was sufficient to `communicate ... the possibility of medical negligence.'" Id. at 443, quoting Tanner at 618 So.2d at 181. In Tanner, the supreme court stated:
We hold that the knowledge of the injury as referred to in the rule as triggering the statute of limitations means not only knowledge of the injury but also *686 knowledge that there is a reasonable possibility that the injury was caused by medical malpractice. The nature of the injury, standing alone, may be such that it communicates the possibility of medical negligence, in which event the statute of limitations will immediately begin to run upon discovery of the injury itself.
Id. at 181-82 (footnote omitted).
The instant defendants argue that because Bryant's injuries were similar to those in Hazen, they were serious enough to "communicate the possibility of medical negligence," thereby triggering the statute of limitations the day after his surgery. The problem with this argument is that it fails to account for the Bryant's allegations of concealment and intentional misrepresentation of fact. Neither Tanner nor Hazen addressed the issue of fraudulent concealment. Nardone made clear that if the plaintiff proves fraudulent concealment, the statute of limitations is tolled.
Application of this concept is demonstrated in Rogers v. Ruiz, 594 So.2d 756 (Fla. 2d DCA 1991). In that case, the plaintiff's husband died undergoing heart bypass surgery. Because the plaintiff filed her complaint more than two years after learning of her husband's death, the trial court granted summary judgment to the defendants.
Consistent with but before the rule enunciated in Tanner, the Second District found that the statute of limitations was triggered when the plaintiff learned her husband died because she was on notice of the injury and the fact that it resulted from the surgery. However, the court also found that genuine issue of material fact existed regarding whether the surgeon and the hospital concealed the surgeon's negligence, which, if true, would toll the running of the statute of limitations. The court held that "[f]raudulent concealment of circumstances which would (a) put a plaintiff on the type of notice requisite to trigger the statute ... or (b) prevent plaintiff's investigation from ... `discover[ing] any additional facts needed to support a medical negligence action,' ... tolls the running of the statute." Id. at 765, quoting Goodlet v. Steckler, 586 So.2d 74, 75 (Fla. 2d DCA 1991).
Clearly, the injury in Rogers was sufficient to trigger the statute under Tanner and Hazen. Nevertheless, concealment or intentional misrepresentation of fact, if proven, would toll the running of the statute. Applying this rule to the instant case requires us to quash the dismissal orders because the second amended complaint clearly raised the issues of concealment and intentional misrepresentation. Bryant's alternative argument, that the allegations against the instant defendants should relate back to the original complaint, lacks merit.
ORDERS QUASHED; REMANDED.
GRIFFIN and THOMPSON, JJ., concur.
NOTES
[1] Although the pre-suit notices are not contained in the record, both parties acknowledge in their briefs that Bryant instituted pre-suit procedures against the instant defendant pursuant to Chapter 766.