Dear Mr. Crawford:
On behalf of the Board of Trustees of the Lake County Water Authority, you ask this office's opinion on the following question:
Does the Lake County Water Authority have the legal authority to expend funds from its budget for the following purposes:
1. Assist in providing sponsorship for fishing tournaments in lakes within Lake County;
2. Assist the Lake County's Sheriff's Office in Marine Patrol funding;
3. Purchase and manage land for conservation purposes when such land is deemed by the Authority helpful in controlling and conserving the water resources of Lake County; and
4. Assist a private, nonprofit soccer league in providing funding to operate a recreational soccer league?[1]
The Lake County Water Authority is a special district, created by special act:
"For the purposes of controlling and conserving the freshwater resources of Lake County; fostering and improving the tourist business in the county by improvements to streams, lakes, and canals in the county; providing recreational facilities for tourists and citizens and taxpayers of the county by a more efficient use of the streams, lakes, and canals in the county; improving the fish and aquatic wildlife of the county by improving the streams, lakes, and canals in the county; and protecting the freshwater resources of Lake County through assisting local governments in treating of stormwater runoff by conserving fresh water to improve the streams, lakes, and canals in the county, there is created and incorporated a special taxing district extending territorially throughout the present limits of Lake County, Florida. . . ."[2]
The Lake County Water Authority's governing board of trustees, consisting of seven residents of Lake County, has been given all the powers of a body corporate, including the power to
"buy, acquire by condemnation or eminent domain in the manner prescribed for use by counties in Florida, sell, own, use, control, operate, improve, and lease all land and personal property as the board deems necessary or proper in carrying out the provisions of [the authority's enabling act] . . . and to pay all other costs and expenses reasonably necessary or expedient in carrying out and accomplishing the purposes of this act."[3]
As an administrative agency created by statute, the authority has no inherent or common law powers. Instead, its powers are limited to those expressly granted by statute or necessarily implied therefrom.[4]
While an express power duly conferred may include the implied authority to use the means necessary to carry out the express power, this office has stated on numerous occasions that such implied power may not warrant the exercise of a substantive power not conferred.[5] Moreover, any reasonable doubt as to the lawful existence of a particular power sought to be exercised is to be resolved against such an exercise.[6]
Fishing Tournaments/Private Nonprofit Soccer League
While the authority has the power to foster and improve tourist business in Lake County, the Legislature has directed that this be accomplished through improvements to streams, lakes, and canals in the county. In addition, the authority's ability to provide recreational facilities for tourists and citizens and taxpayers of the county is prescribed through a more efficient use of the streams, lakes, and canals in the county.[7]
The use of authority funds to host a fishing tournament or to sponsor a soccer league would not appear to be related to the authority's duties to foster and improve tourism through the improvement of streams, lakes and canals within the county. Nor do such expenditures of authority funds appear to relate to the other responsibilities or purposes of the district. Accordingly, I am of the opinion that the authority's enabling legislation does not permit authority funds to be used for such purposes.
Marine Patrol
Section 1 of the authority's charter provides that the authority was created for the purpose of "controlling and conserving the freshwater resources of Lake County." (e.s.) Words in a statute, however, are not to be read in isolation but in context with other provisions of the statute.[8] Accordingly, the phrase "controlling and conserving the county's freshwater resources" must be considered in context of the duties imposed upon, and the powers granted to, the authority.
Moreover, in construing a statute, the courts will generally look at the purpose of the legislation, examining such things as the history of the act, evil to be corrected, intention of the law-making body, the subject regulated, and the object to be obtained.[9] While the authority's original enabling legislation also referred to "controlling and conserving" the fresh water resources of the county, the Legislature, in establishing the authority, stated:
"(a) That Lake County has within its boundaries large acreage of highly developed agricultural land, including thousands of acres of citrus groves and fruit and vegetable producing land.
(b) That the problem of an adequate supply of fresh water for this developed land and for the remaining thousands of acres of undeveloped land in the county, as well as an adequate supply of safe and healthful fresh water for human and animal consumption is of grave concern to the county and its citizens and taxpayers.
(c) That there are many streams, lakes, and canals in the county, including two chains of lakes, each having a large water storage capacity.
(d) That the proper control by drainage, irrigation, and storage of the fresh water in these streams, lakes and canals is necessary to the material development in the county in which all of its citizens and taxpayers will be the beneficiaries."[10]
In 1957, the Legislature amended section 9 of the authority's enabling legislation to permit the authority to, among other things, police all navigable waterways in Lake County and to establish speed limits and other rules and regulations for the protection of life and limb of persons using the waterways of Lake County and for the protection of fish and wildlife along the waterways.[11] In 1963, section 9 was substantially rewritten to provide, among other things, that the authority controlled "all streams, including slow moving streams, flowing from any of the water reservoirs in Lake County, whether natural or constructed, into the system of lakes and streams in or adjacent to Lake County for the protection of the natural water reservoirs and the adjacent and neighboring areas."[12] Such language is currently contained in section 9(f) of the authority's charter.[13]
You have not advised this office of the specific duties the Marine Patrol is performing on behalf of the authority. Clearly, the authority may expend funds to carry out its duties[14] and is authorized to enter into agreements with governmental entities for the purpose of carrying out, or in the judgment of the board assist it in carrying out, the purposes of the act.[15] However, in the absence of specific information regarding the actual duties the Marine Patrol is performing on behalf of the authority, this office cannot definitively comment on the validity of funding the Marine Patrol.
Purchase and Management of Land for Conservation Purposes
To accomplish the purposes set out in section 1 of the charter, the authority is authorized to acquire, hold and sell real and personal property and to construct and maintain necessary works and improvements.[16] The authority has been granted the power to "buy . . . own, use, control, operate, improve, and lease all land and personal property as the board deems necessary or proper in carrying out the provisions of [the authority's enabling act] . . . ."[17] Section 9(b) of the charter, for example, provides that the authority may acquire
"by purchase, gift, lease, condemnation, eminent domain, or any other manner such lands within the territorial extent of the authority as arereasonably necessary for constructing and maintaining the works andmaking improvements required to carry out the intent of this act . . . . The authority shall also have the right to acquire by purchase, gift, lease, condemnation, or eminent domain, or in any other manner, land, timber, earth, rock, and other materials or property, and property rights, including riparian rights, in such amounts as are reasonably necessary or useful in the development of the works or improvements
before referred to. . . ." (e.s.)
While "controlling and conserving the county's freshwater resources" is one of the purposes for which the authority was established, such term must be considered in context of the duties imposed upon, and the actual powers granted to, the authority. Thus, in purchasing property for conservation, the authority must consider whether such purchase is in accordance with the actual powers granted to the authority set out in section 9 of the authority's charter. Such a determination, however, would have to be made on a case by case basis, dependent upon the specific facts.
Sincerely
Bill McCollum
Attorney General
BM/tjw
[1] While you state that payments to the soccer league are made pursuant to a contract, this office has not been provided with the contract. Moreover, your memorandum of law does not address the issue of the contract. Thus, this opinion discusses only whether the district is generally authorized to expend district funds to support a soccer league and does not address the validity of a contract requiring such payments.
[2] Section 3, Ch. 05-314, Laws of Fla., setting forth s. 1 of the authority's charter.
[3] Section 3, Ch. 05-314, Laws of Fla., setting forth s. 9(a) of the authority's charter. And see s. 9(b) of the charter providing that the authority may acquire "by purchase, gift, lease, condemnation, eminent domain, or any other manner such lands within the territorial extent of the authority as are reasonably necessary for constructing and maintaining the works and making improvements required to carry out the intent of this act . . . ."
[4] See, e.g., City of Cape Coral v. GAC Utilities, Inc., ofFlorida, 281 So. 2d 493 (Fla. 1973); Halifax Drainage District ofVolusia County v. State, 185 So. 123 (Fla. 1938); State ex rel.Greenberg v. Florida State Board of Dentistry, 297 So. 2d 628 (Fla. 1st DCA 1974), cert. dismissed, 300 So. 2d 900 (Fla. 1974).
[5] See, e.g., Ops. Att'y Gen. Fla. 78-114 (1978), 78-101 (1978), and 78-95 (1978). See also Op. Att'y Gen. Fla. 90-64 (1990), in which this office concluded that a housing authority, created pursuant to Ch. 159, Fla. Stat., was not authorized to establish, wholly own and operate a state-chartered savings bank. And see Florida State University v.Jenkins, 323 So. 2d 597 (Fla. 1st DCA 1975) (implied power must be essential in order to carry out the expressly granted power or duty imposed); Gardinier, Inc. v. Florida Department of PollutionControl, 300 So. 2d 75 (Fla. 1st DCA 1974) (implied powers accorded administrative agencies must be indispensable to powers expressly granted).
[6] State ex rel. Greenburg v. Florida State Board of Dentistry,supra; City of Cape Coral v. GAC Utilities, Inc., of Florida,supra.
[7] See s. 1 of the authority's charter.
[8] See, e.g., Acosta v. Richter, 671 So. 2d 149 (Fla. 1996);Metropolitan Dade County v. Milton, 707 So. 2d 913 (Fla. 3d DCA 1998) (it is permissible to consider the contextual use of statutory term in ascertaining its meaning); Sneed v. State, 736 So. 2d 1274 (Fla. 4th DCA 1999). Cf. Turnberry Isle Resort and Club v. Fernandez, 666 So. 2d 254
(Fla. 3d DCA 1996) (under the doctrine of noscitur a sociis, the meaning of statutory terms, and the legislative intent behind them, may be discovered by referring to words associated with them in the statute);Cepcot Corporation v. Department of Business and ProfessionalRegulation, Construction Industry Licensing Board, 658 So. 2d 1092 (Fla. 2d DCA 1995) (court looked to the terms "construct," "repair," "remodel," and "demolish," in the statute to determine what types of duties were encompassed by the use of the terms "alter" and "improve").
[9] See, e.g., Smith v. Ryan, 39 So. 2d 281 (Fla. 1949); State Boardof Accountancy v. Webb, 51 So. 2d 296 (Fla. 1951);DeBolt v. Departmentof Health and Rehabilitative Services, 427 So. 2d 221 (Fla. 1st DCA 1983); Op. Att'y Gen. Fla. 99-61 (1999) (in construing statute, court will consider its history, the evil to be corrected, the purpose of the enactment, and the state of the law already in existence).
[10] Section 1, Ch. 53-29222, Laws of Florida. The 1953 act created the authority as the Oklawaha Basin Recreation and Water Conservation and Control Authority. The name was changed to the Lake County Water Authority by s. 2, Ch. 00-492, Laws of Fla.
[11] Section 2 of Ch. 57-1484, Laws of Fla.
[12] See Ch. 63-1507, Laws of Fla.
[13] And see s. 9(e) of the charter providing for the board's control of streams, lakes, canals, dams, locks, levees, dikes, sluiceways, reservoirs, holding basins, floodways, etc., within the territorial limits of the authority.
[14] See, e.g., s. 1(a) of the charter stating that the board has the power to "pay all other costs and expenses reasonably necessary or expedient in carrying out and accomplishing the purposes of this act."
[15] See s. 9(h) of the charter providing:
"The board may enter into any agreement or contract with the Federal Government or the state, or any agency, political subdivision, or instrumentality of either; and counties adjoining Lake County; and municipalities and taxing districts in Lake County and in counties adjoining Lake County for the purpose of carrying out, or which in the judgment of the board may assist it in carrying out, the purposes of this act."
[16] See section 9(a), (b), (d) of the charter relating to the authority's right to acquire property.
[17] Section 9(a) of the charter